# IN RE OPINION OF THE JUSTICES

## (203 N.W.2d 526)

(File No. 11250. Opinion filed January 15, 1973)

TO HIS EXCELLENCY, RICHARD F. KNEIP, THE GOVERNOR OF THE STATE OF SOUTH DAKOTA:

Pursuant to Section 5 of Article V of the South Dakota Constitution, your communication dated and received the late afternoon of Thursday, January 11, 1973, requests the opinion of the Justices of the Supreme Court relating to Section 8 of Article IV of the South Dakota Constitution adopted at the general election on November 7, 1972. You deem this request to be of utmost solemn occasion involving the duties of your office.

This section, which may be found in Chapter 1 of the 1972 Session Laws, reads and appears as follows:

"Section 8. REORGANIZATION.

"All executive and administrative offices, boards, agencies, commissions and instrumentalities of the state government and their respective functions, powers and duties, except for the office of governor, lieutenant governor, attorney general, secretary of state, auditor, treasurer, and commissioner of school and public lands, shall be allocated by law among and within not more than twenty-five principal departments, organized as far as practicable according to major purposes, by no later than July 1, 1974. Subsequently, all new powers or functions shall be assigned to administrative offices, agencies and instrumentalities in such manner as will tend to provide an orderly arrangement in the administrative organization of state government. Temporary commissions may be established by law and need not be allocated within a principal department."

"Except as to elected constitutional officers, the Governor may make such changes in the organization of offices, boards, commissions, agencies and instrumentalities, and in allocation of their functions, powers and duties, as he considers necessary for efficient administra-

tion. If such changes affect existing law, they shall be set forth in executive orders, which shall be submitted to the Legislature within five legislative days after it convenes, and shall become effective, and shall have the force of law, within ninety days after submission, unless disapproved by a resolution concurred in by a majority of all the members of either house."

After referring to this section and mentioning pertinent clauses thereof, your communication requests answers to the three following questions:

"1. Would the allocation of all executive and administrative offices, boards, agencies, commissions, and instrumentalities of the state government and their respective functions, powers and duties, except for the elected constitutional offices, among and within not more than twenty-five principal departments by executive order or orders which, prior to July 1, 1974, become effective and have the 'force of law' through the procedures established in the second paragraph of Section 8, Article IV of the State Constitution comply with the provisions of the first paragraph of Section 8, Article IV of the State Constitution?

"2. Can an executive order which becomes effective and has the force of law by the procedures established in Article IV, Section 8 of the South Dakota Constitution transfer an agency or function created and attached by statute to a constitutional office from that office to a principal department within the executive branch?

"3. Can an executive order which becomes effective and has the force of law by the procedures established in by Article IV, Section 8 of the South Dakota Constitution allow the head of an agency or commission transferred from a constitutional office and hitherto appointed by a constitutional officer to be appointed by the governor or his appointee?"

Reorganization of the Executive Branch and other branches of government has been the subject of discussion and debate for many years. It appears the "executive and administrative offices, boards, agencies, commissions and instrumentalities" of state government have, like "Topsy", grown to nearly unmanageable numbers with an increase of persons in accord with Parkinson's law.

This situation became the concern of legislators and citizens alike and led to the creation of committees, official and voluntary, to study the problem and make recommendations for more efficient administration.

Apparently dissatisfied with the slow pace of reorganization which resulted from the former method of enacting changes, i.e., the governor only having authority to suggest or request enactment of statutes by the legislature, the people provided another method to accomplish this in the second paragraph. They gave the Governor the power to initiate changes by executive order. To preserve the system of checks and balances of power they provided that either house, by a majority vote of all members, could disapprove the proposed change. While there is some difference in the wording of the powers granted in the two paragraphs, no question as to that is here presented.

In our opinion the authority of the Governor to make changes in the organization of offices, boards, commissions, agencies and the duties therein as he considers necessary for efficient administration is separate from, and not dependent on, the power to allocate by law, or the exercise or nonexercise of that power provided in the first paragraph. The use of the term "by law" was intended to refer to the legislative process of this state and means enactment of a statute by the Legislature or the people by reservation of their initiative and referendum rights. See South Dakota Constitution, Article III, § 1. This allocation fixes a limit of twenty-five departments.

At this point it may be of interest to discuss the opinion of the Supreme Court of Michigan in McDonald v. Schnipke, 380 Mich. 14, 155 N.W.2d 169. Michigan's amendment included

plain language limiting the Governor's authority; such limitation is not included in our amendment. The first paragraph, Section 2 of Article V of the Michigan Constitution of 1963, is substantially the same as the first paragraph of our § 8; it *requires* all

> "executive and administrative offices [etc.] * * * shall be allocated by law among and within not more than 20 principal departments. * * *

> "* * * *Subsequent* to the initial allocation, the governor may make changes in the organization of the executive branch * * *."

Schedule section 12 thereof provides:

> "The *initial* allocation of departments *by law* pursuant to Section 2 of Article V of this constitution, shall be completed within two years after the effective date of this constitution. *If such allocation shall not have been completed within such period, the governor, within one year thereafter, by executive order, shall make the initial allocation.*" (Emphases supplied)

The plain and clear language limiting the power of the Michigan Governor to act, *"Subsequent* to the initial allocation" (which "initial allocation * * * shall be completed within two years") was omitted from our amendment. As the language of our § 8 is substantially the same as that of Michigan, except for the "Subsequent" clause, it appears our Legislature patterned our § 8 after the Michigan Section 2, intentionally omitting the quoted limiting clause.

█ Our conclusion that the powers granted the Governor in the second paragraph are not dependent on or limited by the power granted or the exercise or non-exercise of the power to allocate given in the first paragraph is further supported by the legislative history of § 8.

House Joint Resolution No. 513 was introduced by Messrs. Clay and Hawley on Wednesday, January 12, 1972. H.J. 191. It consisted of nine sections covering the Executive Department.

Section 8 thereof, with changes hereafter noted, but which are immaterial here, is now the second paragraph of § 8. Except for verbiage, the disapproval of the executive order was changed from "each" house to "either" house. House Joint Resolution 516 was introduced by Messrs. Osheim and Lebrun on January 13, 1972. H.J. 245. It consisted of one section which, with changes hereafter noted and which are immaterial here, is now the first paragraph of § 8. The limit of "twenty" departments (the Michigan limit) was changed to "twenty-five" and the completion deadline from "June 30, 1974" to "July 1, 1974".

When H.J.R. 513 came up for consideration in the House, it was amended by inserting the text of H.J.R. 516 as the first paragraph of § 8. It was then passed by a 60 to 11 vote. Going over to the Senate the "each" to "either" change, noted above, was made. The Conference Report on the Resolution was approved in the House by a 64 to 0 vote (H.J. 1102) and in the Senate by a unanimous 31 to 0 vote (S.J. 937).

This record of two separate bills, introduced on different dates by different sponsors indicated the independent status of each of the present paragraphs of § 8. That they were placed in the same section by legislative proceedings because the material in H.J.R. 516 (now the first paragraph of § 8) was pertinent to the whole plan of reorganization in H.J.R. 513 and especially of § 8 (now the second paragraph of § 8) does not alter the fact they were deemed independent of each other. This conclusion of independence is further supported for the reason H.J.R. 513, which generally amended Article IV, included originally *only* the Governor's executive order authority paragraph.

As the Michigan opinion of McDonald v. Schnipke, supra, cited and quoted from convention comments, an Address to the People, committee reports, etc. with reference to the adoption of their amendment, we mention some public literature on this subject. Electors in South Dakota were advised in pamphlets broadcast by the amendment's supporters and other interested citizens that the Governor had this independent power. One question and answer bulletin issued by the Director of Extension of S.D.S.U. contained the following:

*"Are there other provisions aimed at encouraging Executive reorganization?*

"The amendment would allow the Governor to re-organize executive branch agencies by executive order, subject to legislative veto. The Commission believes that the Governor is in the best position to know what changes should be made. The replacement article, therefore, gives the Governor major responsibility in initiating Executive reorganization. Each house of the Legislature (by majority vote) would retain the power to veto the executive orders proposed by the Governor. This provision is aimed at providing continued flexibility in the organization of the executive branch as economic and social conditions change."

In separate sentences, the Explanatory Statement of the Attorney General on the official ballot stated:

"Reduction in State Government Departments to no more than 25.

"Reorganization of departments of State Government by Governor unless disapproved by either House of Legislature."

█ In answer to Question 1, we conclude that as Governor, you now have and may exercise the power and authority granted in the second paragraph of Section 8 of Article IV of our Constitution as amended at the election held November 7, 1972, and the exercise of these powers is separate and independent of the power and authority of the Legislature; your authority therein granted is not subject to the exercise or nonexercise of the power of the Legislature to enact such laws as it may deem appropriate within constitutional limits.

One limit on the Governor's authority, we repeat, is that if the changes affect

"existing law, they shall be set forth in executive orders, which shall be submitted to the Legislature within five

legislative days after it convenes, and shall become effective, and shall have the force of law, within ninety days after submission, unless disapproved by a resolution concurred in by a majority of all the members of either house."

Your questions 2 and 3 are of such broad scope, may involve the authority of constitutional officers and the whole spectrum of state government and its institutions, that we decline to answer them as now stated at this time.

DATED at Pierre, South Dakota, this 13th day of January, 1973.

Respectfully submitted,

FRANK BIEGELMEIER,
Presiding Justice,

FRED R. WINANS,
JAMES M. DOYLE,
Associate Justices.

In response to your request for an official opinion this will advise that many state constitutions provide procedures for the orderly reorganization of their executive departments. They fall into two basically different patterns: *First,* reorganization by the governor subject to the legislative veto,[1] and *Second,* reorganization by the legislature subject to subsequent changes by the governor with the approval of the legislature.[2] We cannot agree with the majority opinion that Art. IV, Sec. 8 of our Constitution creates a new and different hybrid type of procedure whereby the governor and the legislature are concurrently authorized to effectuate a reorganization of the executive department in the first instance. Reason and order militate against such a plan of divided authority and potential conflict and confusion.

---

1. For an example of this type of procedure see Art. LXXXVII, Sections 1 and 2 of the Massachusetts Constitution.

---

2. Art. V, Sec. 2, of the Michigan Constitution is an example of such procedure.

Because of the similarity of language we are persuaded that Section 8, Art. IV of our Constitution was patterned after the Michigan plan of reorganization. This contemplates an initial allocation of departments in the executive branch by the legislature. Thereafter, the governor "may make such changes" in the organization and in the assignment of functions among its units which he considers necessary for efficient administration. See the Transition Clause of the Michigan Constitution relating to Art. V, Sec. 2 thereof and the Comments of the Michigan Constitutional Commission.

Our interpretation is fortified by the legislative history leading to the adoption of Section 8, Article IV of our Constitution during the 1972 session of the legislature. As originally submitted Section 8 consisted only of what is now paragraph two. This authorized reorganization by the governor subject to legislative disapproval. However, the legislature, by separate amendment, added the proviso which now appears as paragraph one of Section 8. Whether by choice or chance this transformed Section 8 into the Michigan pattern of reorganization, i. e., the legislature is directed to effectuate the initial reorganization of the executive department and the governor is empowered to make subsequent changes in organization and allocation subject to legislative disapproval.

By its language the first paragraph of Section 8, Article IV is solely concerned with the duties of the legislature with respect to reorganization. It commands that all executive and administrative departments shall be allocated "by law" among not more than 25 principal departments not later than July 1, 1974. The same paragraph provides that temporary commissions "may be established by law". As the other justices state in their opinion, "The use of the term 'by law' was intended to refer to the legislative process of this state and means enactment of a statute by the Legislature or the people by reservation of their initiative and referendum rights."

In summary it is our opinion that paragraph one of Section 8, Article IV of our Constitution is directed solely to the legislature and commands that body to effectuate a complete plan

of reorganization of the executive branch of our government not later than July 1, 1974. Paragraph two of Section 8 becomes operative after the initial reorganization has been accomplished by the legislature. It authorizes the governor to "make such changes" in the organization and functions of the executive department which he considers necessary for efficient administration subject to legislative disapproval.

Therefore, in reply to question 1 of your request it is our opinion the governor of this state has no authority or duty under Section 8, Article IV to make any changes in the organization or functions of the executive department until after the legislature has accomplished its initial reorganization of that department.

In view of our conclusion with reference to question 1, it is unnecessary to answer questions 2 and 3 now as there is no immediate urgency with respect to your official duties involving reorganization of the executive department.

Respectfully submitted this 15th day of January, 1973.

CHARLES S. HANSON
ROGER L. WOLLMAN
Associate Justices