McDONALD v. SCHNIPKE.

OPINION OF THE COURT.

1. CONSTITUTIONAL LAW—SPECIAL AND GENERAL PROVISIONS—APPLICATION.
   A special provision of the Constitution will prevail over a general provision in respect to the subject matter of the special provision, and the general provision will be left to control in cases where the special provision does not apply.

2. SAME—SPECIAL AND GENERAL PROVISIONS—DISCIPLINE OF MILITIA.
   Disciplinary action with respect to an adjutant general of the militia is controlled by the special provision of the Constitu-

REFERENCES FOR POINTS IN HEADNOTES
[1] 16 Am Jur 2d, Constitutional Law § 69.
[2-8] 36 Am Jur, Military §§ 14, 61; 43 Am Jur, Public Officers §§ 187, 189.

tion relating to the discipline of the militia, if a conflict exists between such provision and a general provision of the Constitution empowering the governor to remove or suspend State officers; hence, it is unnecessary to determine whether the adjutant general is a State officer within the purview of the general provision (Const 1963, art 3, § 4; art 5, § 10).

3. MILITIA—REMOVAL—GOVERNOR—DISCIPLINE OF OFFICERS.

The constitutional power of the governor as the commander-in-chief of the militia includes the power to call out the armed forces to execute the laws, suppress insurrection, and repel invasion, but does not include the power to remove or discipline officers of the militia (Const 1963, art 5, §§ 10, 12).

4. SAME—OFFICERS—REMOVAL—GOVERNOR.

The governor's general constitutional power to remove elective or appointive State officers, except legislative or judicial officers, for gross neglect of duty or for corrupt conduct in office, or for any other misfeasance or malfeasance therein, does not include the power to remove the adjutant general, the specific provision for the militia being controlling (Const 1963, art 3, § 4; art 5, § 10; CL 1948, § 32.12).

5. APPEAL AND ERROR—QUESTIONS REVIEWABLE—ADJUTANT GENERAL—STAFF OFFICERS—MILITIA.

Whether the adjutant general is a staff officer within the purview of statute directing that "staff officers * * * shall hold their positions until they shall have reached the age of 64 years unless retired prior to that time by reason of resignation, disability, or for cause to be determined by a court-martial legally convened for that purpose" is not determined in view of provision of the code of military justice subjecting all persons belonging to the organized militia to the code (CL 1948, § 32.12; CLS 1961, § 32.302).

6. CONSTITUTIONAL LAW—ORGANIZATION OF EXECUTIVE BRANCH—IMPLEMENTATION BY STATUTE OR EXECUTIVE ORDER.

Provisions of the new State Constitution requiring that the executive branch of the State government be organized into not more than 20 departments required implementation by the legislature or by executive order after 2 years (Const 1963, art 5, §§ 2, 3; sched § 12).

7. SAME—ORGANIZATION OF EXECUTIVE BRANCH—REMOVAL OF ADJUTANT GENERAL.

Implementation by law of constitutional provisions providing for formation of 20 principal departments of the State and

for appointment by the governor of the heads of principal departments whenever a single executive is head of such a department, with these persons serving at the governor's pleasure, *held*, not to apply to proceedings where governor removed one adjutant general and appointed another prior to effective date of the implementing statute, because, until that time, there could be no head of a principal department to serve "at the pleasure of the governor" (Const 1963, art 5, §§ 2, 3; PA 1965, No 380).

DISSENTING OPINION.
SOURIS, J.

8. OFFICERS—REMOVAL BY GOVERNOR—ADJUTANT GENERAL.

*Governor's removal of the adjutant general from office after the effective date of the constitutional provision that a single executive who is head of a principal department shall serve at the governor's pleasure, but before the effective date of the executive organization act which established 20 principal departments held, proper, the military establishment being a principal department of the State before the executive organization act, and no constitutional or other reason appearing for deferring the operative effect of the constitutional provision until after the organization into 20 departments (Const 1963, art 5, § 3; PA 1965, No 380).*

Appeal from Court of Appeals, Division 2, McGregor, P. J., and Burns and Quinn, JJ., denying quo warranto action. Submitted October 6, 1967. (Calendar No. 15, Docket No. 51,572.) Decided January 8, 1968.

4 Mich App 68, reversed.

Original action for writ of quo warranto by Major General Ronald D. McDonald against Major General Clarence C. Schnipke, adjutant general of Michigan, to test the right of defendant to the office of adjutant general. Court of Appeals denied writ. Plaintiff appeals. Reversed.

*Miller, Canfield, Paddock & Stone,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Curtis G. Beck,* Assistant Attorney General, for defendant.

T. M. Kavanagh, J.   On October 8, 1964, Major General Ronald D. McDonald, then the appointed and duly qualified adjutant general of the State of Michigan, was summarily removed from office by the governor.   Subsequently, the governor reinstated General McDonald as adjutant general, but immediately suspended him from acting in that capacity.

On February 15, 1965, the governor commenced hearings against General McDonald based on charges of malfeasance and misfeasance in office. These hearings were held under the authority of the Constitution of 1963, art 5, § 10.   Upon completion of the hearings the governor on May 20, 1965, issued what was called a "final decision" purporting to remove General McDonald as adjutant general and declaring the office vacant.   Thereafter, on July 22, 1965, Major General Clarence C. Schnipke was appointed adjutant general.

General McDonald commenced original quo warranto action in the Court of Appeals.   On July 26, 1966, the Court of Appeals denied the relief sought (4 Mich App 68).   Appellant McDonald is here on leave granted November 14, 1966 (378 Mich 739).

Appellant claims that the exclusive method of removing the adjutant general as a staff officer of the Michigan national guard is provided for in CL 1948, § 32.12 (Stat Ann 1961 Rev § 4.604), which states that staff officers "shall hold their positions until they shall have reached the age of 64 years, unless retired prior to that time by reason of resig-

nation, disability, or for cause to be determined by a court-martial legally convened for that purpose."

Appellant also claims that the action of the governor in purportedly removing him from his position as adjutant general is void and of no effect because the controlling statutory provision calling for a court-martial was not followed.

Three sections of the Constitution of 1963 are involved in the principal questions on appeal:

Article 3, § 4. "The militia shall be organized, equipped and *disciplined* as provided by law." Emphasis supplied.)

Article 5, § 10. "The governor shall have power and it shall be his duty to inquire into the condition and administration of any public office and the acts of any public officer, elective or appointive. He may remove or suspend from office for gross neglect of duty or for corrupt conduct in office, or for any other misfeasance or malfeasance therein, any elective or appointive State officer, except legislative or judicial, and shall report the reasons for such removal or suspension to the legislature."

Article 5, § 12. "The governor shall be commander-in-chief of the armed forces and may call them out to execute the laws, suppress insurrection and repel invasion."

Appellant contends that the power given to the legislature by article 3, § 4, has been fully exercised in the military establishment act (CL 1948 and CLS 1961, §§ 32.1–32.85 [Stat Ann 1961 Rev §§ 4.591–4.675]). He also contends that by section 12 of that act he was assured of tenure as adjutant general and was guaranteed that he would not be stripped of tenure unless by reason of "resignation, disability, or *for cause to be determined by a court-martial.*" (Emphasis supplied.)

The attorney general, on behalf of appellee, Major General Schnipke, contends that the Constitution of 1963, art 5, § 10, provides that the governor shall have power to remove all State officers except legislative or judicial.

The attorney general further contends that the adjutant general of the national guard is a State officer and is not excluded from the operation of article 5, § 10, as are legislative or judicial officers and, therefore, is included within that provision and subject to removal by the governor.

We first direct our attention to the contention of the attorney general that the appellant is a State officer and therefore is subject to removal by the governor. Assuming, but not deciding, that appellant is a State officer, there exists a conflict between article 5, § 10, which provides for removal by the governor of State officers except legislative and judicial officers, and article 3, § 4, which provides for *discipline* of the militia by law.

It is unnecessary for us to decide whether appellant is a State officer within the purview of article 5, § 10, which is a general provision of the Constitution, as article 3, § 4 is a specific provision relating only to the militia itself. The rule to be followed when there is a conflict between general and specific provisions in the Constitution is as follows:

"In such a case, if there is a conflict between a general and a special provision in a constitution, the special provision must prevail in respect of its subject matter, since it will be regarded as a limitation on the general grant, but the general provision will be left to control in cases where the special provision does not apply." 16 Am Jur 2d, Constitutional Law, § 69, p 247, and cases there cited.

See, also, 16 CJS, Constitutional Law, § 25, p 98, and cases there cited.

Therefore, it is immaterial whether plaintiff is or is not a State officer, as if any conflict exists between the general and specific provisions, article 3, § 4—being a specific provision—must control.

The attorney general urges that by virtue of article 5, § 12, which states that the governor is the commander-in-chief of the militia, the governor has inherent power to remove military officers. Reading the provisions as a whole, however, we find that (1) the governor is the commander-in-chief and (2) by virtue of that fact he may call the armed forces out to (a) execute the laws, (b) suppress insurrection, and (c) repel invasion. We do not read in this section any power of the commander-in-chief to remove or to otherwise discipline officers of the militia.

Pursuant to the Constitution of 1908, art 15, § 2 (the forerunner to the Constitution of 1963, art 3, § 4), the legislature enacted the Michigan code of military justice—PA 1957, No 297[1]—entitled:

"An act to provide a uniform code of military justice for the Michigan national guard, not in the service of the United States, and for the Michigan State troops, when the same shall be in existence, and to repeal acts and parts of acts."

This act repealed and replaced PA 1913, No 311, entitled:

"An act to provide for the *disciplining* of the national guard of the State of Michigan, by defining military offenses, fixing their punishment, and establishing courts for the correction of said offenses, and providing methods of enforcing their sentences." (Emphasis supplied.)

---

[1] CLS 1961, §§ 32.301–32.427 (Stat Ann 1961 Rev §§ 4.686(1)–4.686(127)).

PA 1957, No 297, § 2, being CLS 1961, § 32.302 (Stat Ann 1961 Rev § 4.686[2]), reads as follows:

"The following persons are subject to the provisions of this act:

"*All persons belonging to the organized militia* and all other persons lawfully called, ordered, drafted or inducted into, or ordered to duty in or with the organized militia, from the dates they are required by the terms of the call, order or other directive to obey the same." (Emphasis supplied.)

Section 16 of the act provides for general, special, and summary courts-martial. In section 14, trial by court-martial is limited to military offenses. In the same section the military offenses are enumerated and at least the following are applicable to the allegations of which appellant is accused:

"Loss, damage, destruction or wrongful disposition of military property; * * * frauds against the government connected with military duty or operations; conduct unbecoming an officer and gentleman; and other general acts or omissions to the prejudice of good order and military discipline."

The respective parties also disagree as to whether or not the appellant is a "staff officer" within the purview of CL 1948, § 32.12 (Stat Ann 1961 Rev § 4.604), which reads in part as follows:

"Staff officers * * * shall hold their positions until they shall have reached the age of 64 years, unless retired prior to that time by reason of resignation, disability, or for cause to be determined by a court-martial legally convened for that purpose."

It is not necessary to decide this question in view of section 2 of PA 1957, No 297, which is quoted above and applies to all persons belonging to the organized militia.

The attorney general argues in his brief that this litigation is moot under the provisions of the Constitution of 1963, art 5, §§ 2 and 3. Article 5, § 2, provides for the organization of the executive branch of government into not more than 20 principal departments. PA 1965, No 380,[2] allocates the various executive departments into the principal departments and provides for the department of military affairs as one of the principal departments. It also provides, pursuant to article 5, § 3, that the governor shall appoint the head of that department and that he shall serve at the pleasure of the governor.

Two questions arise: Whether the provisions of the Constitution of 1963, art 5, §§ 2 and 3 are self-executing. Whether the provision in article 5, § 3, stating that the heads of the principal departments shall serve at the pleasure of the governor, applies to appellant.

Reference to the constitutional debates[3] discloses that committee proposal 71, section b, as originally introduced by both the majority and minority members of the committee on the executive branch, consisted of 6 separate paragraphs, 4 of which were the forerunners of article 5, §§ 2 and 3, of the Constitution of 1963. In the third paragraph of section b, both the majority report (p 1766) and the minority report (p 1769) use identical wording as follows:

"The allocation of departments *by law* pursuant to this section shall be completed within 2 years after the effective date of this constitution. If such allocation shall not have been completed within such period, the governor, within 1 year thereafter, *by*

---

[2] CL 1948, §§ 16.101–16.608 (Stat Ann 1965 Cum Supp §§ 3.29[1]–3.29[508]).

[3] 1 Constitutional Convention 1961, Official Record, p 1766.—RE-PORTER.

*executive order,* shall make such allocation." (Emphasis supplied.)

This paragraph was adopted as section 12 of the schedule and temporary provisions. The convention comments concerning section 12 read as follows (p 3409)[4]:

"This is a new section providing that the initial allocation of departments specified in the executive branch article shall be completed within 2 years. If not accomplished within that period, the governor is given authority to make the allocation within 1 year thereafter."

In the preface to the address to the people, the summary of the major provisions of the executive branch contains the following (p 3359):

"The role of the governor as the key responsible person in the executive branch is strengthened
*    *    *

"4. By requiring the regrouping of the State's 126 executive agencies into not more than 20 departments. *After the initial reorganization by the legislature,* the governor is given the power to recommend further reorganization of executive agencies in the interest of efficiency and economy and to enforce his recommendations, subject to veto by each house of the legislature." (Emphasis supplied.)

In the majority report on committee proposal 71 we find the following (p 1768):

"Under the proposal, a 2-year period would be provided for *statutory allocation* of departments. If not done during that time, the governor would have 1 year in which to make the *allocation by executive order.*" (Emphasis supplied.)

---

[4] 2 Constitutional Convention 1961, Official Record.—REPORTER.

In discussing the third paragraph of section b of committee proposal 71, various delegates to the constitutional convention referred to the legislative or executive action necessary to implement this provision. On March 22, 1962, Delegate John B. Martin, while speaking of this provision, stated (p 1836):

"This is not a thing that can be done overnight. It can't be done by waving a wand. And for that reason the proposal does provide that *the legislature shall have a 2-year period in which to accomplish this*. If it is not accomplished at the end of that time, the governor has authority to do the job himself. The purpose and the expectation is that the legislature will set up whatever is necessary in the way of a study commission, will use whatever experience has been accumulated from prior study commissions and will engage in a 2-year project during which *it will come up with a structure of government* that will be sensible and will be as economical as possible, and will provide the kind of government we ought to have here in Michigan."

On the same day Delegate Alvin M. Bentley, chairman of the executive subcommittee, also directed attention to the issue here. At page 1837 of the constitutional debates he made these statements:

"We have specifically avoided making some of the errors that were committed by other State constitutional conventions, and one was attempting to spell out within the constitution any specific titles for these 20 principal departments. *We are leaving that matter entirely in the hands of the legislature and the governor,* recognizing as we do that over the years, titles and functions of these various departments may change. * * *

*"We are giving the legislature the first 2 years
following the adoption of the constitution to create
by law the proposed reorganization* of this hydra-
headed monster into not more than 20 principal
departments. Following the initial 2-year period,
as Chairman Martin has said, Mr. Chairman, the
governor would, if he so sees fit, have the privilege
of, by executive order within the third year, further
reorganization where he deemed it necessary or
where he deemed initial action on the part of the
legislature to have been lacking."

On the same day Delegate Bentley summarized
the implementing provisions, stating (p 1842):

"Mr. Chairman, members of the committee, we
now come to the provision of the proposal of the
executive branch committee dealing with the ques-
tion of reorganization after the third year follow-
ing the adoption of the constitution. *As it was
explained in the previous 2 paragraphs, we have
provided for the initial period of 2 years for the
legislature to reorganize. We have provided for
the governor to act by executive order for the third
year."* (Emphasis supplied.)

Therefore, from the convention comments, the
address to the people, the majority committee re-
port, committee proposal 71, section b, and the
statements of the various delegates, we find it was
necessary to have implementation of article 5, §§ 2
and 3 of the Constitution of 1963 by the legislature
or by executive order after 2 years.

As to the second issue—whether section 3 applies
to appellant—we note the wording of the pertinent
part of that section:

*"The head of each principal department* shall be
a single executive unless otherwise provided in
this constitution or by law. \* \* \* When a single
executive is *the head of a principal department*

\* \* \* he shall be appointed by the governor by and with the advice and consent of the senate and *he shall serve at the pleasure of the governor."* (Emphasis supplied.)

The section speaks only of "the head of each principal department."

PA 1965, No 380, above referred to, being the executive organization act, providing for a department of military affairs, became effective July 23, 1965. The removal of General McDonald as adjutant general occurred on May 20, 1965, two months prior to the effective date of this act. As there was no principal department at the time of the removal proceedings, there could be no head thereof serving "at the pleasure of the governor." Hence article 5, § 3, of the Constitution of 1963 cannot apply here. This was conceded by the solicitor general during oral arguments in answer to the following question by the Court:

"*Q.* Is it your position that between the effective date of the Constitution of 1963 and the effective date of the 1965 act, Public Act 380, that it would be inappropriate to argue, to contend, or to find, that the head of the military department was the adjutant general, who, by virtue of article 5, § 3, served at the pleasure of the governor and therefore is removable at the pleasure of the governor?

"*A. (By solicitor general)*: I would answer yes, sir. But I have this, in all candor to the Court, qualification in my mind. *I think that legislative action was necessary to implement the provisions of article 5, § 3."* (Emphasis supplied.)

We conclude, then, that the provisions of article 5, §§ 2 and 3 of the Constitution of 1963 were not self-executing and had to be implemented by law. This implementation was accomplished by PA 1965, No 380, being the executive organization act.

As the effective date of PA 1965, No 380, was on July 23, 1965, and the removal of appellant McDonald and appointment of appellee Schnipke took place prior to the effective date of that act, it does not apply to these proceedings.

It is also urged that PA 1967, No 150, is controlling here. This argument fails for the same reason as do the arguments with regard to article 5 of the Constitution of 1963 and PA 1965, No 380—all removal proceedings took place before the effective date of PA 1967, No 150.

We hold that the removal proceedings by the governor were contrary to law in that they were held pursuant to article 5, § 10 of the Constitution of 1963 and not under PA 1957, No 297, as is mandatory under article 3, § 4 of the Constitution, and hence are void and of no effect.

The order of the Court of Appeals denying the writ of quo warranto is reversed. The writ shall issue. Appellant shall have costs.

KELLY, BLACK, O'HARA, and BRENNAN, JJ., concurred with T. M. KAVANAGH, J.

SOURIS, J. (*dissenting*). Article 5, § 3, Constitution of 1963, provides, *inter alia:*

"When a single executive is the head of a principal department, unless elected or appointed as otherwise provided in this constitution, he shall be appointed by the governor by and with the advice and consent of the senate *and he shall serve at the pleasure of the governor."* (Emphasis added.)

This section is not expressly made dependent upon accomplishment of reorganization of the executive branch of government into 20 principal departments as required by preceding section 2 of the same article, nor do I believe we should infer

that it is. Three other sections of article 5, sections 4, 8, and 9, as well as sections 2 and 3, refer to the principal departments of government. Except for section 2, there is no constitutional mandate nor other logical reason, for deferring the operative effect of any of the four remaining sections beyond the effective date of the new Constitution. On and after January 1, 1964, the effective date of our 1963 Constitution, therefore, article 5, § 3, was fully operative.

It is our responsibility to determine whether, during the interim between the effective date of the new Constitution and the effective date of the executive organization act, PA 1965, No 380, the State's military establishment was one of the principal departments of the State. That it was then, as it is now by virtue of Act No 380, seems to me to be self-evident. Hence, on May 20, 1965, the adjutant general, as head of the State's military establishment, served only "at the pleasure of the governor".

I conclude, therefore, that Governor Romney's removal of Major General McDonald from his office as adjutant general of the State was a valid exercise of power granted him by article 5, § 3, Constitution of 1963, and that neither a court-martial nor any other hearing needed to be held. I would affirm the action of the Court of Appeals.