406 Mich. 647 (1979)
281 N.W.2d 299
IN THE MATTER OF THE PETITION FOR A REPRESENTATION ELECTION AMONG SUPREME COURT STAFF EMPLOYEES
Docket No. 62109, (Calendar No. 6).
Supreme Court of Michigan.
Argued February 1, 1979.
Decided July 27, 1979.
Vander Ploeg, Marietti, Mullally, Grimm & Folkert for petitioner Local 586, Service Employees International Union, AFL-CIO.
Frank J. Kelley, Attorney General, Robert A. Derengoski, Solicitor General, and George M. Bourgon and Jon M. DeHorn, Assistants Attorney General, for Employment Relations Commission.
WILLIAMS, J. (for dismissal).
This is a case of first impression. No Michigan or foreign opinion has been cited to us, nor did our research reveal any, *661 where a quasi-judicial agency assumed to bring the Supreme Court before it for adjudication. However, those are the facts of this case. The Michigan Employment Relations Commission (hereinafter MERC) has attempted to take jurisdiction over the Michigan Supreme Court to determine a union representation election proceeding in which this Court would be a defendant.
We hold that Const 1963, art 3, § 2, headed separation of powers of government, precludes MERC's assumption of such jurisdiction over the Michigan Supreme Court. We do not here consider whether, or to what extent, Const 1963, art 4, § 48 is modified by Const 1963, art 6, § 7. We order MERC Case No. R77 L-572 dismissed for lack of jurisdiction.
I. FACTS
On December 27, 1977, Local 586, Service Employees International Union, AFL-CIO, pursuant to MCL 423.212; MSA 17.455(12), petitioned for an election among certain employees working at the Lansing offices of the Michigan Supreme Court. The proposed bargaining unit included:
"All employees in the general list titles, located in Lansing, Michigan. Court officers, custodians, multilith technicians, secretaries, toll terminal operators and receptionists."
More specifically, the bargaining unit included persons holding the above-designated job categories in the employ of the offices of the Supreme Court Clerk, Reporter, Crier and State Court Administrator.
At the request of the Court, MERC both postponed a pre-election conference originally scheduled *662 for January 16, 1978, and agreed to consider the jurisdictional question that is the subject of this opinion. Prior to MERC's consideration, the Court, through then Chief Justice THOMAS GILES KAVANAGH, indicated in two separate letters to Charles M. Rehmus, Chairperson of MERC, its conclusion that art 6, § 7 and art 3, § 2 of the Michigan Constitution prohibited the statutory jurisdiction in question.
In a decision dated September 8, 1978, MERC issued a finding that it did have jurisdiction and ordered that an election be conducted. MERC observed:
"Art 3, § 2 (separation of powers provision) can be dealt with summarily on the observation that clerical employees do not exercise the powers of one branch of government or another."
This Court on October 5, 1978, issued an order to MERC and petitioner herein to show cause why this Court should not dismiss the petition for lack of jurisdiction. Both MERC and petitioner filed briefs on the matter.
II. DISCUSSION
It is elementary that in Michigan government the legislative, executive and judicial branches are separate and co-equal. In re 1976 PA 267, 400 Mich 660, 662-663; 255 NW2d 635 (1977). Article 3, § 2 makes this clear and specific. It reads:
"The powers of government are divided into three branches; legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution." (Emphasis added.)
*663 The Michigan Supreme Court, of course, is charged with superintending the exercise of the judicial power. Art 6, § 4[1] and art 6, § 1.[2]
What the facts of this case show is MERC attempting to bring the Michigan Supreme Court before it as a party in a lawsuit, in which MERC will make a determination and may cause an order to issue affecting the Michigan Supreme Court. In short, MERC is attempting to exercise jurisdiction over the Michigan Supreme Court.
As already indicated, there is no prior Michigan case that has addressed itself to this issue. This may well be because it is such an anomalous situation. It is difficult to envision any comparable situation where a subordinate arm of the judicial branch of government would attempt to exercise an executive power over the Governor or a legislative power over the Legislature. But here an executive agency is attempting to exercise adjudicative authority over the Michigan Supreme Court.
As a further incidental indication of how far out of the order of things it is to have MERC holding court over the Supreme Court, an appeal from the order of MERC is to the Court of Appeals. If MERC has jurisdiction to determine cases with the Supreme Court as a party, then the Supreme Court might be in a position to appeal from the decision of MERC to the Court of Appeals, which again is an inferior tribunal to the Supreme Court. In short, MERC assuming jurisdiction over the Supreme Court puts everything upside-down.
*664 III. RESPONDENTS' ARGUMENTS
At the outset, it is significant to note that respondents have produced no precedent on the issue of an administrative agency's assumption of jurisdiction over a Supreme Court.
Furthermore, in its opinion asserting its jurisdiction to bring the Supreme Court before it as a litigant, MERC summarily dismissed the separation of powers argument:
"Art 3, § 2 (separation of powers provision) can be dealt with summarily on the observation that clerical employees do not exercise the powers of one branch of government or another."
MERC's conclusion focuses on the wrong point. It is not determinative that certain Supreme Court employees may or may not be subject to the public employment relations act, MCL 423.201 et seq., MSA 17.455(1) et seq. The point is that MERC is attempting to bring the Supreme Court before its tribunal as a party defendant. That is what is critical; it is that MERC is taking jurisdiction over the Supreme Court itself, not certain of its clerical employees.
Likewise, MERC's argument in its brief is beside the point. There MERC argues that because Const 1963, art 4, § 48[3] does not specifically exclude Supreme Court employees but does exclude state civil service employees, by negative implication Supreme Court employees are included. Whether Const 1963, art 4, § 48 includes or excludes Supreme Court employees has nothing whatsoever to *665 do with whether 1965 PA 379 should be, or can be, interpreted to give MERC judicial jurisdiction over the Michigan Supreme Court, in violation of the doctrine of separation of powers established by Const 1963, art 3, § 2.
In addition, the Legislature in enacting 1965 PA 379[4] pursuant to Const 1963, art 4, § 48, has not by specific reference included the Michigan Supreme Court. Since an inclusion to give such jurisdiction to MERC would contravene the requirements of Const 1963, art 3, § 2 and be unconstitutional, it would be normal interpretative practice to read 1965 PA 379 as not giving jurisdiction to MERC over the Michigan Supreme Court as in this case.[5]
IV. CONCLUSION
We conclude that the Michigan Constitution does not, as a matter of interpretation or logic, authorize MERC to take jurisdiction over the Michigan Supreme Court. We have been cited no precedent to the contrary.
It is good common sense as well as good law that if a tribunal of the executive department would sit in judgment over the Supreme Court, with respect to the issue, the Supreme Court would no longer be functioning as the Supreme Court. That would erode a cornerstone of our Constitution and of our system of government. We therefore hold that *666 Const 1963, art 3, § 2, considered with Const 1963, art 4, § 48, precludes MERC from taking jurisdiction over the Michigan Supreme Court.
MERC Case No. R77 L-572 is ordered dismissed for lack of jurisdiction. No costs, a public question.
COLEMAN, C.J., and FITZGERALD and RYAN, JJ., concurred with WILLIAMS, J.
COLEMAN, C.J.
I agree with the opinion of Justice WILLIAMS and write separately only to add another analysis in support of the same conclusion.
In December of 1977 Local 586 of the Service Employees International Union, AFL-CIO, petitioned the Michigan Employment Relations Commission, hereinafter MERC, for an election among employees of the Michigan Supreme Court for the purpose of being designated the exclusive bargaining agent for our employees, i.e., their union representative. As set forth in the petition the proposed bargaining unit included:
"All employees in the general list titles located in Lansing, Michigan. Court officers, custodians, multilith technicians, secretaries, toll terminal operators and receptionists."
The MERC scheduled a pre-election conference for January 16, 1978. At the request of this Court the conference was postponed pending a determination by MERC as to whether the public employment relations act (hereinafter PERA), MCL 423.201 et seq.; MSA 17.455(1) et seq., is applicable to employees of the Supreme Court in light of Const 1963, art 3, § 2 and art 6, § 7.
On September 8, 1978, MERC issued an opinion holding that ministerial level employees of the *667 Michigan Supreme Court have the right to organize and engage in concerted activity within the meaning of PERA. Accordingly MERC ordered that an election in the proposed bargaining unit should be conducted.
On October 5, 1978 we ordered MERC and the petitioning union to show cause why the Court should not order MERC to dismiss the petition for lack of jurisdiction.
The apparent basis for MERC jurisdiction is PERA, which provides for the resolution of disputes concerning public employees and specifically provides for the filing of petitions for elections to determine whether there shall be, and, if so, which organization shall be, the exclusive bargaining agent.[1]
The statutory provisions of PERA, in turn, are authorized, in general terms, by Const 1963, art 4, § 48:
"The legislature may enact laws providing for the resolution of disputes concerning public employees, except those in the state classified civil service."
The employees of this Court are assuredly "public" employees and, as this Court is a court of record, they are not "in the civil service".[2] The Court's employees are not, therefore, exempted from the provisions of PERA by the stated exception concerning civil service.
Thus, the ultimate basis for the apparent jurisdiction of MERC is the constitutional provision that the Legislature may by legislation regulate the employer-employee relationship where public *668 employees, other than civil servants, are concerned.[3] Pursuant to PERA, MERC has exercised jurisdiction over disputes concerning working conditions in general, and specifically over hours and wages, and the appointment and removal of employees.[4]
The general provision in art 4, § 48 to the effect that the Legislature may by legislation regulate the employer-employee relationship of public employees conflicts with the following specific provision concerning employees on the staff of this Court in art 6, § 7:
"The Supreme Court may appoint, may remove, and shall have general supervision of its staff. It shall have control of the preparation of its budget recommendations and the expenditure of moneys appropriated for any purpose pertaining to the operation of the court or the performance of activities of its staff except that the salaries of the justices shall be established by law. All fees and perquisites collected by the court staff shall be turned over to the state treasury and credited to the general fund." (Emphasis supplied.)
The importance of constitutional questions and the frequency with which they have arisen in the various states and in the United States courts has resulted in the widespread acceptance of certain fundamental rules of construction[5] which we apply hereafter.
*669 First, that there is real conflict between these provisions regarding control over the limited number of public employees on the staff of this Court is clear and insurmountable when reasonable plain meaning is attributed to the words of each. Under art 4, § 48, PERA gives and MERC exercises jurisdiction over virtually all questions that may arise concerning "working conditions" meaning wages, hours, appointment, removal and general supervision practices. Art 6, § 7 specifically grants this Court the powers of appointment, removal and general supervision and it is difficult to find terms clearer than those of the article itself to express the intent to give this Court jurisdiction over all "working conditions". A first principle of constitutional construction, to avoid finding conflict if possible, is therefore unavailing to solve the problem here.
A second rule, fundamental and well settled, is that where there is a conflict between general and specific provisions in the constitution, the specific provision must control, the specific provision being regarded as a limitation on the general provision's grant of authority. McDonald v Schnipke, 380 Mich 14, 19-20; 155 NW2d 169 (1968); Hart v Wayne County, 396 Mich 259, 273; 240 NW2d 697 (1976). Application of this rule serves another important rule of construction consistently, because neither of the sections is by our construction, rendered void or ineffective: the general provision of art 4, § 48 is left controlling in all cases where the specific provision of art 6, § 7 and the specific exception in § 48 itself, concerning the civil service, do not apply. McDonald and Hart, supra.
In addition this construction conforms to the rule that requires attention and respect be paid to the intent of those who framed the constitution. *670 That the framers specifically intended to grant this Court the power, within the budget provided to it by the Legislature, over the wages paid to its employees and to govern its own personnel matters, is specifically revealed in the legislative history of the constitutional convention.[6] On the other hand, we find no evidence in the legislative history of art 4, § 48 to indicate that the framers were even aware of the latent conflict between that section and § 7 of art 6. For that oversight we express understanding and sympathy. In Board of Control of Eastern Michigan University v Labor Mediation Board, 384 Mich 561, 566; 184 NW2d 921 (1971), we made the same mistake in stating, by way of dictum, that the only exception to the exercise of legislative power given by art 4, § 48 was that of legislative power over the state classified civil service.
It is my conclusion that the provisions of PERA may not be extended to be applied to employees of the staff of this Court and, accordingly, I also would order MERC to dismiss, for lack of jurisdiction, the petition filed with it on December 27, 1977.
KAVANAGH, J.
In December of 1977 Local 586 of the Service Employees International Union, AFL-CIO, *671 petitioned the Michigan Employment Relations Commission, hereinafter MERC, for an election among employees of the Michigan Supreme Court for the purpose of being certified as the exclusive bargaining agent for our employees, i.e., their union representative. As set forth in the petition the proposed bargaining unit included:
"All employees in the general list of titles located in Lansing, Michigan. Court officers, custodians, multilith technicians, secretaries, toll terminal operators and receptionists."
The MERC scheduled a pre-election conference for January 16, 1978. At the request of this Court the conference was postponed pending a determination by MERC as to whether the public employment relations act (hereinafter PERA), MCL 423.201 et seq.; MSA 17.455(1) et seq., is applicable to employees of the Supreme Court in light of Const 1963, art 3, § 2 and art 6, § 7.
On September 8, 1978, MERC issued an opinion holding that ministerial level employees of the Michigan Supreme Court have the right to organize and engage in concerted activity within the meaning of PERA. Accordingly MERC ordered that an election in the proposed bargaining unit should be conducted.
On October 5, 1978 we ordered MERC and the petitioning union to show cause why the Court should not order MERC to dismiss the petition for lack of jurisdiction.
Because the briefs and arguments of counsel have convinced us we were in error in our original position, we conclude that they did "show cause". We should not, therefore, order MERC to dismiss the petition, and we should obey the order of MERC to hold an election.
*672 Good faith and responsible discharge of our duty, however, oblige us to explain to our employees, the union, MERC, and the people wherein we erred and the reasoning which persuades us to correct our mistake.
Originally we believed that art 3, § 2 precluded the Legislature from exercising any authority over the employees of this separate co-equal branch of government. It reads:
"The powers of government are divided into three branches; legislative, executive, and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution."
We also felt that art 6, § 7 gave the Court total, exclusive and unalienable control over its staff. It reads:
"The supreme court may appoint, may remove, and shall have general supervision of its staff. * * *"
We were convinced that we had to construct an exemption for our staff comparable to the express exemption of classified civil service employees contained in art 4, § 48 in order to comply with art 3, § 2 and art 6, § 7. The section reads:
"The legislature may enact laws providing for the resolution of disputes concerning public employees, except those in the state classified civil service."
We regarded the exemption for our staff necessary to resolve the apparent conflict of legislators exercising dominion over what we considered to be our constitutionally delegated responsibility  namely, regulation of the relationship of this *673 Court and its staff. In other words, we perceived a violation of separation of powers and constructed an exemption to avoid it. We are now convinced that we were confusing two questions  the existence of legislative power and the scope of it.
In the opinion accompanying its decision MERC suggested that no separation of powers question was involved because the employees whose rights under PERA were sought to be enforced were performing ministerial, not judicial, duties, and they did not exercise the powers of one branch of government or another. We are not persuaded that this distinction is significant.
The separation of powers question is not involved because of the Constitution itself. Art 3, § 2 provides that "[n]o person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution". (Emphasis added.) Art 4, § 48 provides that the "legislature may enact laws providing for the resolution of disputes concerning public employees" exempting only state classified civil service employees. We regard art 4, § 48 as the express exception contemplated in art 3, § 2. Therefore, applying PERA to our staff will not violate the separation of powers provision.
The question remains whether applying PERA to our staff will conflict with the power granted to this Court in art 6, § 7 to "appoint", "remove", and "have general supervision" of its staff. This constitutional power distinguishes our Supreme Court from other divisions of our "one court of justice". We are convinced that there is nothing inherent in the collective bargaining process itself that would necessarily intrude upon the constitutionally specified power of the Supreme Court to hire, fire, and supervise its own staff. As MERC noted the scope *674 of bargaining which would otherwise prevail under PERA may be limited by art 6, § 7.
The extent and effect of this limitation on our power to bargain is not before us in this proceeding. We simply acknowledge it and hold that a general duty to bargain does not necessarily involve an unconstitutional intrusion on judicial authority. We no longer view art 4, § 48 as in irreconcilable conflict with art 6, § 7.
With apology to our employees, the union, MERC, and the people for any inconveniences suffered on account of our original error, we would have today directed our staff to do whatever is necessary to comply with the MERC order of September 8, 1978.
LEVIN, J., concurred with KAVANAGH, J.
BLAIR MOODY, JR., J. (dissenting).
I dissent from the unprecedented views of the majority opinion. Ministerial level employees of the Supreme Court are public employees within Const 1963, art 4, § 48 and the public employment relations act (PERA), MCL 423.201 et seq.; MSA 17.455(1) et seq. As public employees, Supreme Court ministerial level employees have the right to organize and join labor organizations and to engage in concerted activities for the purpose of collective bargaining. MCL 423.209; MSA 17.455(9).
This conclusion is based upon the following rationale:
1. Article 4, § 48 of the 1963 Michigan Constitution does not conflict with Article 6, § 7, since the provisions do not relate to the same subject matter. This Court's power to appoint, remove and supervise its staff, as provided in Article 6, § 7, is similar to an employment contract management rights clause which most employers, public and *675 private, reserve to themselves. It in no way alters the Legislature's constitutional power of Article 4, § 48 to govern the resolution of labor disputes concerning all public employees except those in the state classified civil service.
2. Under the doctrine of primary jurisdiction, the Michigan Employment Relations Commission (MERC) is competent to determine and did determine its own jurisdiction in the instant case.
3. The doctrine of separation of powers does not preclude PERA and its administrative agency MERC from regulating the employment of public employees who serve the courts. That the Supreme Court, as a public employer-party, may initially be subject to MERC's jurisdiction is not the equivalent of MERC exercising powers belonging to the judiciary. MERC is exercising its legislatively authorized function to direct an election of public employees for the purpose of determining labor organization representation. MCL 423.212; MSA 17.455(12). By carrying out this function MERC is not usurping powers that belong to the judiciary.
Accordingly, I would affirm MERC's decision and would permit the ordered election to take place.
I
The question presented is whether the provisions of Const 1963, art 6, § 7 and art 3, § 2 preclude MERC from exercising its statutory jurisdiction, pursuant to PERA, over Michigan Supreme Court employees. Specifically, we must determine whether the authority granted to the Court by Article 6, § 7 conflicts with and overcomes the constitutionally granted power of the Legislature to regulate public employee relations pursuant to Article 4, § 48. Alternatively, we must *676 determine whether application of Article 4, § 48 and PERA to Supreme Court employees violates the separation of powers doctrine embodied in Article 3, § 2 of the 1963 Michigan Constitution.
A
In resolving the question of whether Supreme Court employees are public employees subject to PERA, several constitutional provisions must be examined. Article 4, § 48, the constitutional authorization for PERA, provides:
"The legislature may enact laws providing for the resolution of disputes concerning public employees, except those in the state classified civil service."
Classified state civil service positions are defined in Const 1963, art 11, § 5. "[E]mployees of courts of record" are specifically excluded from the definition.
Accordingly, Supreme Court employees are public employees subject to PERA and its administrative agency MERC, unless Article 6, § 7 can be interpreted as an exception to the broad, all-inclusive language of Article 4, § 48. Article 6, § 7 provides:
"The supreme court may appoint, may remove, and shall have general supervision of its staff. It shall have control of the preparation of its budget recommendations and the expenditure of moneys appropriated for any purpose pertaining to the operation of the court or the performance of activities of its staff except that the salaries of the justices shall be established by law. All fees and perquisites collected by the court staff shall be turned over to the state treasury and credited to the general fund."
*677 This Court has not previously construed the language of Article 6, § 7, since all previous public sector labor questions concerning court employees have dealt with lower court employees. However, on numerous occasions the Court has been asked to interpret the language of Article 4, § 48, both as it applies to lower court employees and other public sector employees.
Eight years ago in a per curiam opinion the Court stated emphatically:
"`Public employment' is clearly intended to apply to employment or service in all governmental activity, whether carried on by the state or by townships, cities, counties, commissions, boards or other governmental instrumentalities. It is the entire public sector of employment as distinguished from private employment. The public policy of this state as to labor relations in public employment is for legislative determination. The sole exception to the exercise of legislative power is the state classified civil service." (Emphasis added.) Board of Control of Eastern Michigan University v Labor Mediation Board, 384 Mich 561, 566; 184 NW2d 921 (1971).
These policy considerations were reiterated just last year when this Court again discussed the pervasive nature of PERA:
"Clearly, the PERA was intended to cover all public employees except for civil service employees specifically excluded by constitutional provision. Nearly every conceivable type of job and profession is covered by collective bargaining agreements under the PERA. If institutions of higher education are indeed different from other public employers, the Legislature could have specifically excluded them from coverage under the PERA. Any exemption or exclusion of public employers from the PERA is the Legislature's prerogative, not that of MERC or the appellate courts." Central Michigan *678 University Faculty Ass'n v Central Michigan University, 404 Mich 268, 280-281; 273 NW2d 21 (1978).
And until the instant case, this Court has consistently held court employees to be public employees subject to PERA. Beginning with the cornerstone case of Judges of the 74th Judicial Dist v Bay County, 385 Mich 710; 190 NW2d 219 (1971), involving a bargaining unit comprised of district court employees, this Court held:
"Court employees are public employees within the definition of [PERA, MCL 423.201 et seq.; MSA 17.455(1) et seq.], and art 4, § 48 of the Michigan Constitution." Bay County, supra, 725.
See, also, Wayne Circuit Judges v Wayne County, 386 Mich 1; 190 NW2d 228 (1971), cert den 405 US 923; 92 S Ct 961; 30 L Ed 2d 794 (1972); Livingston County v Livingston Circuit Judge, 393 Mich 265; 225 NW2d 352 (1975), and Council No 23, Local 1905, AFSCME v Recorder's Court Judges, 399 Mich 1; 248 NW2d 220 (1976), where this Court recognized the application of the Bay Judges decision and PERA to circuit court and recorder's court employees.
Nevertheless, my colleagues maintain that Supreme Court ministerial employees are different from all lower court employees because Article 6, § 7 grants to the Court the power to appoint, remove and supervise the Court staff. It is maintained that this appointment-supervisory power constitutionally prevents our public employees from exercising alternatives pursuant to PERA.
The appointment-supervisory power language of Article 6, § 7 should most certainly be construed as something less than a union prohibition. Initially, within the context of labor law, such language in *679 an employment contract is typically viewed as a management rights clause, reserving to management rights which have consistently belonged to the employer. Similar statutory language, granting to district court judges the power to appoint employees and fix their compensation, did not prevent Justice BRENNAN, writing for the majority in Bay County, supra, from subjecting district court employees to the jurisdiction of MERC.[1]
Furthermore, similar constitutionally based arguments by other public employers have been rejected by the Court. Based upon Const 1963, art 8, § 5 and art 8, § 6, the controlling boards of several Michigan universities have unsuccessfully argued that their general supervisory powers over the institutions of higher learning superseded Article 4, § 48 and PERA. Board of Control of Eastern Michigan University v Labor Mediation Board, 384 Mich 561; 184 NW2d 921 (1971); Regents of the University of Michigan v Employment Relations Comm, 389 Mich 96; 204 NW2d 218 (1973).
Another variation of this argument, that specific public employers should be insulated from the collective bargaining obligation of PERA because of constitutional and statutory grants of authority, was advanced in Pontiac Police Officers Ass'n v Pontiac, 397 Mich 674; 246 NW2d 831 (1976). In that case, the municipality of Pontiac argued that to require bargaining concerning grievance and arbitration procedures would interfere with the constitutional and statutory powers vested in *680 home-rule cities. Although three separate opinions were written in that case, all the justices taking part in the decision agreed that the public employer's duty to bargain collectively pursuant to PERA prevails over conflicting provisions of the charter of a home-rule city.
Clearly, this Court has previously held that PERA was intended by the Legislature to supersede conflicting laws and is superimposed even on those institutions which derive their powers from the Constitution itself. If the constitutional power of appointment is so overwhelming that it prevents the application of PERA to certain public employees, it is indeed an anomaly that PERA defines a public employee as a "person holding a position by appointment * * * in the government of the state of Michigan". MCL 423.202; MSA 17.455(2).
Nonetheless, it is maintained that a conflict exists between the constitutional provisions and that the specific provision of Article 6, § 7 must be regarded as a limitation on the general provision of Article 4, § 48. However, this rule of constitutional construction, specific governing general, is inapplicable in the instant case.
The leading Michigan case delineating this rule of construction is McDonald v Schnipke, 380 Mich 14, 19-20; 155 NW2d 169 (1968), which cites the legal encyclopedia, American Jurisprudence 2d, as authority for the rule. Stated in its entirety, the rule of construction provides:
"Distinct provisions of the constitution are repugnant to each other in such a way as to be irreconcilable only when they are related to the same subject, are adopted for the same purposes, and cannot be enforced without material and substantial conflict. In such a case, if there is a conflict between a general and a special *681 provision in a constitution, the special provision must prevail in respect of its subject matter, since it will be regarded as a limitation on the general grant, but the general provision will be left to control in cases where the special provision does not apply." (Emphasis added.) (Footnotes omitted.) 16 Am Jur 2d, Constitutional Law, § 69, p 247.
Consequently, this rule of construction can only be applied when the constitutional provisions are related to the same subject matter and are adopted for the same purposes. Examination of the constitutional convention committee reports[2] on Article 4, § 48 and Article 6, § 7 indicates that we are dealing with apples and asparagus, not with the same subject matter. Article 4, § 48 was intended as a broad grant of legislative authority over all public employee labor disputes except those involving state classified civil service employees. Article 6, § 7 was primarily a budget-oriented provision[3] which merely extended the appointive *682 power of the Court to its entire staff instead of limiting such power to the three court officers (the Clerk, Reporter and Court Crier) named in the predecessor provision of the 1908 Constitution. Const 1908, art 7, § 6. These provisions were not adopted for the same purposes. Further, both sections may be enforced without material and substantial repugnancy.
Based upon this analysis, Article 4, § 48 does not conflict with Article 6, § 7. MERC is not precluded by Article 6, § 7 from exercising its statutory jurisdiction over Michigan Supreme Court employees.
B
Alternatively, my colleagues determine that MERC's actions in the instant case are tantamount to "holding court over the Supreme Court" and thereby violate the separation of powers doctrine. The question presented is whether application of Article 4, § 48 and PERA to Supreme Court employees violates the separation of powers provision of Const 1963, art 3, § 2, which provides:
"The powers of government are divided into three branches; legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution."
This Court has consistently held that a separation *683 of powers problem does not exist with regard to MERC's enforcement of PERA when the statute is invoked by lower court employees. Judges of the 74th Judicial District v Bay County, 385 Mich 710; 190 NW2d 219 (1971); Wayne Circuit Judges v Wayne County, 386 Mich 1; 190 NW2d 228 (1971), cert den 405 US 923; 92 S Ct 961; 30 L Ed 2d 794 (1972); Livingston County v Livingston Circuit Judge, 393 Mich 265; 225 NW2d 352 (1975); Council No 23, Local 1905, AFSCME v Recorder's Court Judges, 399 Mich 1; 248 NW2d 220 (1976).
One of the bases for this holding is the doctrine of primary jurisdiction which recognizes that an administrative agency is competent to determine its own jurisdiction in the first instance. Labor Mediation Board v Jackson County Road Comm'rs, 365 Mich 645; 114 NW2d 183 (1962). Many additional reasons are set forth in Bay County, supra, by Justice BRENNAN, who summarized stating:
"For all of these reasons it is apparent that [PERA], based on art 4, § 48 of the Michigan Constitution does not encroach upon the constitutional and inherent powers of the judiciary and, therefore, under the philosophy of judicial restraint this Court accedes to the jurisdiction of the Michigan Employment Relations Commission established in that act." Bay County, supra, 729.
Just as in the Bay County case, the Court in the instant case should accede to the jurisdiction of MERC for several reasons.
Initially, an examination of case law dealing with separation of powers indicates that no constitutional conflict exists. In re 1976 PA 267, 400 Mich 660, 663; 255 NW2d 635 (1977), sets forth the principle that judicial powers cannot be interfered with without constitutional authorization:
*684 "The judicial powers derived from the Constitution include rulemaking, supervisory and other administrative powers as well as traditional adjudicative ones. They have been exclusively entrusted to the judiciary by the Constitution and may not be diminished, exercised by, nor interfered with by other branches of government without constitutional authorization. See Attorney General ex rel Cook v O'Neill, 280 Mich 649; 274 NW 445 (1937)."
In the instant case, there is no separation of powers problem since control over the labor disputes of public employees, including Supreme Court employees, was specifically granted in the 1963 Constitution to the Legislature by Article 4, § 48. By enacting PERA in 1965, the Legislature properly delegated operational tasks within the public employment sector to its administrative agency, MERC. Accordingly, pursuant to constitutional approval, MERC is exercising its legislatively authorized function to direct an election of public employees for the purpose of determining labor organization representation. MCL 423.212; MSA 17.455(12).
MERC's statutorily mandated duty to conduct an election, if certain conditions exist, necessitated the employer, the Michigan Supreme Court, being ordered to take certain action. On September 8, 1978, MERC ordered the Court to:
"It is further ordered that the employer shall prepare an eligibility list in alphabetical order, containing eligible voters' names and addresses in accordance with the above description and submit copies of such list forthwith to the Employment Relations Commission and to the other parties.
"It is further ordered that the election shall be conducted on the premises of the employer at such time and date as a commission agent shall determine after consultation with the parties.
*685 "It is further ordered that the employer shall cause to be posted in prominent places in and about the premises, sample ballots and notices of election (furnished by the commission), setting forth the time, date and place of the election at least five (5) days prior to said election."
This action, requiring the public employer to prepare a voter eligibility list, to post ballots and election notices, and to permit the representative election to be conducted on the employer's premises, is standard procedure. That the Supreme Court, as the public employer, may be subject to MERC's jurisdiction under these stated facts is not the equivalent of MERC exercising powers belonging to the judiciary. To the contrary, MERC is exercising its constitutionally approved, legislatively authorized function.
In fulfilling its legislative purpose, MERC acts in a quasi-judicial capacity, as do many administrative agencies. Bay County, supra, 727. However, by carrying out its function, MERC is not usurping powers that belong to the judiciary. To conclude otherwise would be in effect to subvert the legislative foundation of a plethora of administrative commissions and boards, such as the Workers' Compensation Appeal Board, the Employment Security Board of Review, and the Civil Rights Commission.[4]
*686 These three commissions have the authority to directly affect relationships between public employers and their employees. These agencies do not perform judicial functions,[5] nor do their actions transform into judicial functions when the Court is the employer-party in a dispute.
The Supreme Court should not assume a position of potentially placing itself beyond accountability regarding civil rights violations, unemployment compensation disputes, workers' compensation claims or, as in this case, employment relations. The delicate balance of powers afforded the *687 three branches of government should not be tilted in favor of judicial omnipotence by its own hand.
This does not mean, however, that the actions of an administrative agency such as MERC, dealing with Supreme Court employees, can never impinge upon the separation of powers of Const 1963, art 3, § 2. To the contrary, at some future date based upon presently unconceived facts, the specific actions of an administrative agency could be "an impermissible intrusion into the most basic day-to-day exercise of the constitutionally derived judicial powers". In re 1976 PA 267, 400 Mich 660, 663; 255 NW2d 635 (1977).
Nevertheless, under the present facts MERC is exercising its constitutionally approved, legislatively authorized function to direct an election of public employees for the purpose of determining labor organization representation; MERC is not exercising powers belonging to the judiciary.
II
Article 4, § 48 sanctions the application of PERA to ministerial level employees of the Supreme Court. Neither Article 6, § 7 nor Article 3, § 2 bars that application. As a result, I would affirm the decision issued by MERC on September 8, 1978, and would direct the ordered election to take place.
LEVIN, J. (dissenting).
I have signed Justice KAVANAGH'S opinion because I agree with him that legislation authorizing Supreme Court employees to designate or select a collective bargaining representative does not
i) confer powers belonging to the judicial branch of government on the Michigan Employment Relations *688 Commission in violation of Const 1963, art 3, § 2 (separation of powers)
or
ii) necessarily violate Section 7 of Article 6 empowering this Court to "appoint," "remove" and exercise "general supervision of its staff" and to "control" "budget recommendations and the expenditure of moneys appropriated".[1]
I also find myself in substantial agreement with Justice MOODY'S opinion.[2] I am unable, however, to sign it because I do not agree with his construction of § 7.
As Justices KAVANAGH and MOODY state, the jurisdictional and other issues presented do not require a decision at this time concerning the extent of judicial article (art 6) limitations on legislative power to require collective bargaining between the Court and its employees. Nevertheless, absent an expression clarifying the generalization that there may be some limitation on the duty to bargain, the Court staff might conclude that whatever limitations there may be would not significantly affect collective bargaining. Since the staff might so conclude and I am inclined to the view that § 7 bars the Legislature from requiring *689 the Court to bargain concerning some subjects usually a significant part of collective bargaining, I believe I am obliged to state that tentative view to avoid engendering misunderstanding of the extent of my concurrence with the view that the Legislature may require the Court to recognize and bargain with a representative of its employees.
Although this Court has held that art 4, § 48 empowers the Legislature to require collective bargaining between a public employer and its employees, that and other grants of legislative power are subject to limitations imposed by other, conflicting, provisions of the Constitution. The unique reservation in the Constitution itself to the Supreme Court of powers i) to "appoint," "remove" and "have general supervision of its staff", and ii) to "control" preparation of its budget recommendations and expend for any purpose pertaining to its operations whatever moneys are appropriated, suggests that the framers did not intend that the Legislature could enact laws concerning the subject matter or inhibiting the free and independent exercise by this Court of the powers so reserved to it by § 7. And since those powers belong to this Court as it is from time to time composed, no sitting Court may, by agreement or other action, impair or constrain the power of a future Court to modify or change any decision which § 7 otherwise would empower it to make. Future Courts must, under the Constitution, be free to appoint, remove and supervise staff and exercise such controls over budget and expenditures as may appear appropriate at the time. Just as the Legislature cannot pass a law another Legislature cannot repeal, neither can the Supreme Court preclude a future Court, in the exercise of its constitutional powers, from reversing a staff, budgetary or spending decision.
*690 I am thus persuaded that the Court cannot contract concerning or otherwise limit the free and independent exercise of its § 7 powers, and that the Legislature may not pass laws concerning or inhibiting the exercise of those powers, and thus cannot require the Court to bargain thereon. This probably means that the Court cannot be required to bargain collectively regarding many, perhaps the most critical, of the areas of employee concern, e.g., hiring, tenure, removal, and perhaps even wages and other economic issues requiring the expenditure of appropriations.
It is with misgivings, because they are not necessary to decision, that I express these tentative views, but, again, I do so in an effort to avoid causing misunderstanding.
NOTES
[1] Article 6, § 4, headed general superintending control over courts; writs; appellate jurisdiction, provides in pertinent part as follows:

"The supreme court shall have general superintending control over all courts * * *."
[2] Article 6, § 1 headed judicial power in court of justice; divisions, provides in pertinent part as follows:

"The judicial power of the state is vested exclusively in one court of justice, which shall be divided into one supreme court * * *."
[3] Article 4, § 48 reads:

"The legislature may enact laws providing for the resolution of disputes concerning public employees, except those in the state classified civil service."
[4] Entitled, "AN ACT to amend the title and sections 1, 3, 6 and 7 of Act No. 336 of the Public Acts of 1947, entitled `An act to prohibit strikes by certain public employees; to provide certain disciplinary action with respect thereto; to provide for the mediation of grievances; and to prescribe penalties for the violation of the provisions of this act,' being sections 423.201, 423.203, 423.206 and 423.207 of the Compiled Laws of 1948; and to add 8 new sections to stand as sections 9 to 16; and to repeal certain acts and parts of acts."
[5] Ford Motor Co v State Tax Comm, 400 Mich 499, 518; 255 NW2d 608 (1977) (WILLIAMS, J., dissenting), citing State Bar of Michigan v Lansing, 361 Mich 185, 195; 105 NW2d 131 (1960).
[1] MCL 423.212; MSA 17.455(12).
[2] The classified state civil service positions are defined in Const 1963, art 11, § 5 and therein "employees of courts of record" are specifically excluded from the definition.
[3] The title of PERA provides:

"AN ACT to prohibit strikes by certain public employees; to provide review from disciplinary action with respect thereto; to provide for the mediation of grievances and the holding of elections; to declare and protect the rights and privileges of public employees; and to prescribe means of enforcement and penalties for the violation of the provisions of this act."
[4] See, generally, MERC Labor Opinions.
[5] See, generally, 16 Am Jur 2d, Constitutional Law, §§ 58-100, pp 230-284.
[6] "I think, really, all this section does that is at all startling or new is to adopt the concept that when the court has money appropriated to it for its operation by the legislature, once the money has been appropriated the court itself will have control over the amount of wages paid to its employees, and so on and so forth, within the limits of the budget.

"This would in some ways make it, as we are informed by representatives of that court, more readily possible for the supreme court to govern its housekeeping affairs and to handle matters of personnel over there. They have rather strange methods of obtaining assistance, and this would make it possible, for example, for them to attract people who are actually people with rather special training, and, in some instances, professional people that are on their staff." (Emphasis supplied.) 1 Official Record, Constitutional Convention 1961, p 1308.
[1] MCL 600.8271(1); MSA 27A.8271(1) provides:

"Except as otherwise provided, the judges of the district court shall appoint the employees thereof and fix their compensation within appropriations provided by the governing body of each district control unit."
The argument that this statutory language gave district court judges complete autonomy over their employees was clearly rejected in Bay County, supra.
[2] "This is a revision of Sec. 7, Article XVI, of the present [1908] constitution to make it clear that the legislature has power to establish procedures for settling disputes in public employment. The section does not specify what the procedure shall be, but leaves that decision to future legislatures. The state classified civil service is exempted because the constitution has specific provisions in this area." 2 Official Record, Constitutional Convention 1961, Address to the People (Const 1963, art 4, § 48), p 3377.

"This is a revision of Sec. 6, Article VII, of the present [1908] constitution. It extends the appointive power of the supreme court and its supervising control to its entire staff, instead of limiting it to court officers specifically named in the present document.
"The court is granted control of the preparation of its budget recommendations and the expenditure of funds appropriated for its activities, except for salaries of the justices which are established by the legislature. The section requires that fees and perquisites collected by the court staff be turned over to the state's general fund." 2 Official Record, Constitutional Convention 1961, Address to the People (Const 1963, art 6, § 7), p 3385.
[3] Examination of the Official Record of the 1961 Constitutional Convention indicates that the committee members treated the proposed Article 6, § 7 as nothing more than a budget provision. The discussion by the committee members focuses on the budget language of Article 6, § 7:

"[The Supreme Court] shall have control of the preparation of its budget recommendations and the expenditure of moneys appropriated for any purpose pertaining to the operation of the court or the performance of activities of its staff except that the salaries of the justices shall be established by law."
See, generally, 1 Official Record, Constitutional Convention 1961, Committee Proposal 91, § f (Const 1963, art 6, § 7), pp 1307-1312.
[4] As Article 4, § 48 provides constitutional foundation for PERA and thereby MERC's jurisdiction, Article 5, § 29 grants specific constitutional authority to the Civil Rights Commission:

"There is hereby established a civil rights commission which shall consist of eight persons, not more than four of whom shall be members of the same political party, who shall be appointed by the governor, by and with the advice and consent of the senate, for four-year terms not more than two of which shall expire in the same year. It shall be the duty of the commission in a manner which may be prescribed by law to investigate alleged discrimination against any person because of religion, race, color or national origin in the enjoyment of the civil rights guaranteed by law and by this constitution, and to secure the equal protection of such civil rights without such discrimination. The legislature shall provide an annual appropriation for the effective operation of the commission.
"The commission shall have power, in accordance with the provisions of this constitution and of general laws governing administrative agencies, to promulgate rules and regulations for its own procedures, to hold hearings, administer oaths, through court authorization to require the attendance of witnesses and the submission of records, to take testimony, and to issue appropriate orders. The commission shall have other powers provided by law to carry out its purposes. Nothing contained in this section shall be construed to diminish the right of any party to direct and immediate legal or equitable remedies in the courts of this state.
"Appeals from final orders of the commission, including cease and desist orders and refusals to issue complaints, shall be tried de novo before the circuit court having jurisdiction provided by law." Const 1963, art 5, § 29.
[5] These agencies do not exercise powers properly belonging to the judiciary as reserved under Article 3, § 2. The respective responsibilities of the judiciary and administrative agencies are delineated in Article 6, § 28.

"All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record. Findings of fact in workmen's compensation proceedings shall be conclusive in the absence of fraud unless otherwise provided by law." Const 1963, art 6, § 28.
See also Const 1963, art 6, § 13.
[1] "The Supreme Court may appoint, may remove, and shall have general supervision of its staff. It shall have control of the preparation of its budget recommendations and the expenditure of moneys appropriated for any purpose pertaining to the operation of the court or the performance of activities of its staff." Const 1963, art 6, § 7.
[2] I particularly wish to associate myself with his argument on the separation of powers issue. The notion that an administrative tribunal exercises powers belonging to the judicial branch of government or that an employee of a court having appellate jurisdiction over the tribunal cannot file a claim within the tribunal's jurisdiction against the court has no modern support in the authorities. To so hold would mean, for example, that a Supreme Court employee who suffers a work-related injury could not obtain a Worker's Compensation Appeal Board determination if the Court objected to the WCAB taking "jurisdiction" of the employee's claim against the Court.
 ORDER ON REHEARING
 ENTERED DECEMBER 6, 1979

On October 30, 1979 this Court ordered this matter to be reheard, ordered the clerk not to issue the Court's order pursuant to its opinion until further order of the Court, and stated that the scope of the rehearing and procedure to be followed would be set forth in a subsequent order of the Court.
Now therefore, the Court has decided to rehear this matter without further briefs or oral argument and the Court has so considered the matter on rehearing.
On rehearing Justice RYAN withdraws his signature from the opinion authored by Justice WILLIAMS and substitutes the following as his opinion in this matter.
"I concur in the result reached by Chief Justice COLEMAN and so much of her opinion as acknowledges the constitutional primacy of Const 1963, art 6, § 7."
On rehearing the remaining Justices each affirm the opinions signed by them as filed on July 27, 1979.
The clerk is now directed to issue the Court's order pursuant to its opinions which orders the Michigan Employment Relations Commission to dismiss its case No. R77L-572G for lack of jurisdiction.