(No. 75621.—

ADMINISTRATIVE OFFICE OF THE ILLINOIS COURTS *et al.*, Petitioners, v. STATE AND MUNICIPAL TEAMSTERS, CHAUFFEURS AND HELPERS UNION, LOCAL 726, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AFL-CIO, *et al.*, Respondents.

*Opinion filed October 19, 1995.*

FREEMAN, J., dissenting.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, of Chicago, of counsel), for petitioners.

Lisa B. Moss and John F. Ward, of Carmell, Charone, Widmer, Mathews & Moss, of Chicago, for respondent State & Municipal Teamsters, Chauffeurs & Helpers Union, Local 726.

Jacalyn J. Zimmerman, Special Assistant Attorney General, of Springfield, for respondent Illinois State Labor Relations Board.

PER CURIAM: This is an original action for a writ of prohibition (Ill. Const. 1970, art. VI, § 4(a); 134 Ill. 2d R. 381) brought by the Administrative Office of the Illinois Courts and by 20 of the 22 chief circuit judges of the State of Illinois. In their complaint, the plaintiffs seek to prohibit the Illinois State Labor Relations Board from considering a union representation/certification petition submitted to the State Board pursuant to the Illinois Public Labor Relations Act (5 ILCS 315/1 through 27 (West 1992)). As we explain below, we conclude that separation of powers concerns require that this court, as

an employer of the employees at issue here, not be subject to the authority of the administrative agency. Accordingly, we issue the requested writ of prohibition and enjoin the administrative agency from proceeding further with the present matter.

The origins of the case at bar lie in a representation/certification petition filed with the Illinois State Labor Relations Board on November 30, 1992, by Local 726 of the State and Municipal Teamsters, Chauffeurs and Helpers Union, International Brotherhood of Teamsters, AFL-CIO (Local 726). The Illinois State Labor Relations Board (State Board) has jurisdiction "over collective bargaining matters between employee organizations and the State of Illinois," among other employers. (5 ILCS 315/5(a) (West 1992).) Local 726 is seeking to represent, for collective-bargaining purposes pursuant to the Public Labor Relations Act, certified court reporters employed in the circuit courts of Illinois. The union's petition designated the State of Illinois as the employer of the court reporters and identified the Administrative Office of the Illinois Courts as the employer representative. A copy of the petition was served on William M. Madden, then acting director of the Administrative Office.

An evidentiary hearing on the petition was conducted on January 11, 1993. At the hearing, Local 726 asserted that the State is the employer of the court reporters and that the Administrative Office is an appropriate employer representative. The Administrative Office took an opposing view, contending that the court reporters in each circuit are jointly employed by this court and the chief judge of the circuit. The Administrative Office maintained further that this court and the chief judges would be necessary parties to a proceeding under the Act but that the State Board could not exercise jurisdiction over the court without violating

the separation of powers doctrine. The only witness to testify at the hearing was the acting director of the Administrative Office.

The hearing officer issued a recommended decision and order on February 23, 1993. The hearing officer found that this court is the sole employer of the court reporters. The hearing officer rejected the Administrative Office's contention that the chief circuit judges should be viewed as joint employers, concluding that whatever authority the chief judges might possess in that regard is subject to the greater authority of this court. In addition, the hearing officer disagreed with the Administrative Office's argument that this court cannot be subject to the jurisdiction of the State Board. The hearing officer believed that proceedings under the Labor Act would affect only nonjudicial, administrative matters and thus would not intrude on this court's judicial function. The hearing officer directed that a representation election be held in a bargaining unit that would comprise all court reporters employed by the State in the circuit courts, with the exception of court reporters serving in administrative, supervisory, confidential, or managerial capacities.

The Administrative Office and Local 726 separately filed exceptions to the hearing officer's recommended decision and order. Both parties challenged the hearing officer's conclusion that the supreme court is the sole employer of the court reporters. After hearing arguments by the two parties, the Illinois State Labor Relations Board issued a decision and order in the matter on May 25, 1993. In its decision, the State Board identified three possible employers of the court reporters: this court, the Administrative Office, and the chief judges of the State's 22 judicial circuits. The Board noted that only the Administrative Office had been served with notice of the proceedings and had appeared at the eviden-

tiary hearing; without the participation of the two other potential employers, the Board found the record insufficient to identify the employer or employers of the court reporters. The Board therefore remanded the matter to the hearing officer for further proceedings, with directions to the hearing officer to amend the union's certification/representation petition and to serve the amended petition on the supreme court, the Administrative Office, and the 22 chief judges. The Board also directed the hearing officer to conduct further hearings as necessary and to issue a supplemental recommended decision and order.

A supplemental hearing was scheduled for June 18, 1993. The chief judges jointly entered their appearances before the Board on June 3, 1993; this court did not enter an appearance. On June 11, 1993, the Administrative Office and 20 of the 22 chief circuit judges instituted the present case, filing in this court a motion for leave to file an original complaint for a writ of prohibition. Named as defendants in the complaint are the State Board and Local 726. By their complaint, the plaintiffs seek to prevent the hearing officer and the State Board from taking any further action on the pending representation/certification petition. We entered an order staying the administrative proceedings, and we later granted the plaintiffs leave to file the present complaint for a writ of prohibition.

The plaintiffs contend that the supreme court and the chief judges are joint employers of the official court reporters. The plaintiffs further maintain that the Public Labor Relations Act cannot be applied to supreme court employees without infringing on this court's constitutional authority and violating the separation of powers doctrine. In response, the State Board and Local 726 both argue that the present matter is not ripe for adjudication because a number of factual questions

remain unresolved and because the State Board has not decided any issue adversely to this court. The State Board also contends that the matter falls within its primary jurisdiction and that this court should therefore defer to the agency so that the agency may make the initial determination. With respect to the separation of powers question, the Board and Local 726 contend that prior decisions of this court have established that there is no constitutional infirmity in applying the Labor Act to the judicial branch and, in any event, that application of the Act to employees of this court does not infringe on this court's judicial authority. In addition to the preceding arguments, Local 726 raises the alternative contention that this court alone should be regarded as the employer of the court reporters and that the Administrative Office is an appropriate employer representative.

The parties agree that a writ of prohibition will not be awarded unless the following prerequisites have been satisfied:

> "For a writ of prohibition to be issued, the action to be prohibited must be judicial or quasi-judicial in nature; the jurisdiction of the tribunal against which the writ is sought must be inferior to that of the issuing court; the action to be prohibited must be either outside the tribunal's jurisdiction or, if within its jurisdiction, beyond its legitimate authority; and the petitioner must be without any other adequate remedy. (*People ex rel. No. 3 J. & E. Discount, Inc. v. Whitler* (1980), 81 Ill. 2d 473, 479-80.)" *Orenic v. Illinois State Labor Relations Board* (1989), 127 Ill. 2d 453, 468.

The parties also agree that the first two requirements governing the issuance of a writ of prohibition have been met in this case: the action to be prohibited is quasi-judicial in nature, and the tribunal against which the writ is sought is inferior to this court. The present dispute centers on the third and fourth requirements listed above: whether the action to be prohibited is

outside the Board's jurisdiction or authority, and whether the plaintiffs are without any other adequate remedy. For the reasons that follow, we conclude that this is a proper case for prohibition.

We will determine, as a threshold matter, whether this court is an employer of the official court reporters. Although constitutional concerns could still be present even in the absence of a direct employment relationship between this court and the court reporters, the existence of that relationship provides one means of gauging the potential impact of the Act on this court's administrative and supervisory authority over the judicial branch of State government. Even if this court were not an employer of the court reporters, constitutional problems could still arise, given the nature of the work of the court reporters and this court's authority over the judicial system.

The Illinois Public Labor Relations Act defines "employer" by listing the various public entities to which the Act is and is not applicable. (5 ILCS 315/3(*o*) (West 1992).) Although the statutory definition of that term evinces the broad scope of the legislation, it provides little assistance in deciding who, among several public entities asserting an employment relationship with the members of a proposed bargaining unit, is correctly recognized as their employer.

The State Board has applied a functional analysis in resolving this question. According to the Board's test, " '[W]ho is the employer' is a question of who has the authority to hire, promote, evaluate, discipline, discharge and set work rules for the employees in question, as well as the authority to obtain funding and to set fringe benefits." (*Du Page County Board*, 1 Pub. Employee Rep. (Ill.) par. 2003, Nos. S—RC—9, S—RC—17, at VIII—13 (ISLRB April 26, 1995) (hereinafter 1 Pub. Employee Rep. (Ill.) par. 2003).) Under that standard, a

party will be regarded as an employer if the party's presence at the bargaining table is necessary to the establishment of an effective bargaining relationship. (*Du Page County Board*, 1 Pub. Employee Rep. (Ill.) par. 2003, at VIII—14.) The appellate court has previously relied on the State Board's functional test (see *City of Rockford v. Illinois State Labor Relations Board* (1987), 158 Ill. App. 3d 166, 171), and there can be no objection to applying it in a case like this one, in which the extent of the Board's authority over another branch of State government is at issue.

Before addressing this issue, however, we must dispose of two threshold questions raised by the State Board. First, unlike the Board, we do not believe that further administrative hearings are necessary before we are able to determine which public entity is properly regarded as the employer of the court reporters. The relevant legislation affords a sufficient basis on which we may determine this question as a matter of law, and the presentation of further testimony and argument to the agency would not materially advance this inquiry. Similarly, we do not agree with the State Board that the doctrine of primary jurisdiction requires that this court defer to the administrative agency so that the agency may initially decide who employs the court reporters. Under the doctrine of primary jurisdiction, a court, though having jurisdiction over a case, will refer the matter to an administrative agency with expertise in the subject. (*Kellerman v. MCI Telecommunications Corp.* (1986), 112 Ill. 2d 428, 444.) The doctrine is designed to promote uniformity in regulation and to gain the benefit of the agency's special expertise. (*United States v. Western Pacific R.R. Co.* (1956), 352 U.S. 59, 63-64, 1 L. Ed. 2d 126, 132, 77 S. Ct. 161, 165.) Referral to the customary agency is not warranted, however, when regularity or consistency is not a concern and the mat-

ter does not require "the judgment of a technically expert body" for its resolution. (*Nader v. Allegheny Airlines, Inc.* (1976), 426 U.S. 290, 304-06, 48 L. Ed. 2d 643, 655-56, 96 S. Ct. 1978, 1987-88; *Kellerman*, 112 Ill. 2d at 445.) The case before us involves unique questions of statutory and constitutional interpretation that fall within the range of our special competence rather than the State Board's. Accordingly, we do not believe that the doctrine of primary jurisdiction requires that we defer to the pending agency proceeding.

Considering now the employer question, we agree with the plaintiffs that this court must be regarded as an employer of the court reporters. The relevant statutes reflect the substantial authority that this court exercises over different aspects of the terms and conditions of the court reporters' employment. To be sure, many of these powers are divided by statute between this court and the chief judge of each circuit, and this court and the chief judges could therefore be regarded as joint employers (see *Orenic v. Illinois State Labor Relations Board* (1989), 127 Ill. 2d 453, 474), though we do not determine the chief judges' status here. Under the Court Reporters Act (705 ILCS 70/1 through 9 (West 1992)), this court determines the number of court reporters in each circuit (705 ILCS 70/3 (West 1992)), while the chief judge of the circuit decides whom to hire and discharge (705 ILCS 70/4 (West 1992)). Acting within statutory guidelines, this court sets the salaries for the court reporters. (705 ILCS 70/8(a) (West 1992).) A chief judge has the authority to assign a court reporter anywhere within his or her circuit, while this court may transfer a reporter to a different circuit. (705 ILCS 70/6 (West 1992).) Using criteria set by this court, chief judges schedule holidays, vacations, and sick time for individual court reporters. This court establishes statewide standards for the conduct of court reporters. This court

is also responsible for preparing and administering proficiency tests for court reporters. 705 ILCS 70/7 (West 1992).

Applying the State Board's own test for determining the identity of an employer, we conclude that this court would clearly be a necessary party to any bargaining relationship involving the court reporters. Although this court does not directly control every aspect of employment enumerated in the Board's standard (see *Du Page County Board*, 1 Pub. Employee Rep. (Ill.) par. 2003, at VIII—13 (an employer "has the authority to hire, promote, evaluate, discipline, discharge and set work rules for the employees in question, as well as the authority to obtain funding and to set fringe benefits")), we believe that this court exercises a sufficient number of these powers that it must realistically be regarded as an employer, if not the employer, of the court reporters. This court sets performance standards, administers proficiency examinations, determines the number of court reporters who may be hired in a circuit, and establishes a salary schedule. This court also formulates holiday, sick leave, and vacation policies for the court reporters. Given our extensive control over significant aspects of the terms and conditions of court reporters' employment, we must conclude that this court is an employer of the court reporters.

Having made that determination, we must next decide whether the State Board may exercise jurisdiction over this court in a proceeding brought under the Illinois Public Labor Relations Act. The plaintiffs argue that the State Board's exercise of jurisdiction in these circumstances would trench on this court's constitutional authority and would violate the separation of powers doctrine. In response, the defendants initially contend that two prior decisions of this court have already answered the major question here in their favor.

Citing *County of Kane v. Carlson* (1987), 116 Ill. 2d 186, and *Orenic v. Illinois State Labor Relations Board* (1989), 127 Ill. 2d 453, the defendants maintain that those cases established that the Public Labor Relations Act is, on its face, applicable to all levels of the judicial branch. The defendants thus contend that we must reject the plaintiffs' constitutional challenge in this case.

We do not agree with the defendants that either *County of Kane* or *Orenic* controls the outcome here. Unlike the present case, both *County of Kane* and *Orenic* involved only employees at the circuit court level, who were employed by the chief judge of the circuit or by the circuit clerk. (*Orenic*, 127 Ill. 2d at 456-57 (consolidating four proceedings involving assistant public defenders, bailiffs, stenographers, and bailiffs and jury commissioners); *County of Kane*, 116 Ill. 2d at 194-96 (consolidating two proceedings involving deputy circuit clerks and probation officers).) Notably, those cases did not involve the application of the Public Labor Relations Act to employees of this court. We note, too, that neither *Orenic* nor *Kane County* precludes a finding that the Act is unconstitutional in a particular result or application.

In addition, *County of Kane* expressly recognized that the decision in that case was simply a preliminary foray into the field; the opinion did not purport to answer, for all time, the various questions that were bound to arise as the Act came to be applied in additional fact settings. As the court explained:

"We emphasize the posture of the proceedings before us. The cases consolidated here are preliminary attempts to gauge the scope of the Act, and they come well in advance of any determinations by the State Board of the myriad questions that may be presented under the statutory scheme. Particular problems, including some on a constitutional level, are sure to arise as the broad provisions of the Act are applied to the unique workings of the judicial

branch, but those questions are not before us here."
(*County of Kane*, 116 Ill. 2d at 210.)

As *County of Kane* suggests, the opinion in that case was intended to provide only an introductory guide to the future development of this area of the law.

In contrast to *County of Kane* and *Orenic*, the present case involves the operations of this court and our constitutional duty to exercise supervisory authority over the judicial system of this State. For these reasons, we must reject the defendants' argument that our prior decisions have already resolved the separation of powers question in their favor. The plaintiffs, for their part, urge us to reconsider the holdings in *County of Kane* and *Orenic*. Although a fresh examination of those decisions might be necessary at some point, there is no need for us to undertake that task at this time, for the two cases can be distinguished on the grounds set forth above. As we explain later in this opinion, our administrative and supervisory authority over the judicial branch differentiates this court from the circuit courts.

We now turn to the question whether the State Board may exercise jurisdiction over this court in a proceeding under the Illinois Public Labor Relations Act. A separation of powers is implicit in the organizational structure of State government and the division of power among its three branches. (*DeLuna v. St. Elizabeth's Hospital* (1992), 147 Ill. 2d 57, 68; *County of Kane v. Carlson* (1987), 116 Ill. 2d 186, 206.) The same principle is made explicit by article II, section 1, of the Illinois Constitution, which states:

> "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." (Ill. Const. 1970, art. II, § 1.)

The constitution does not expressly define which powers are legislative, which are executive, and which are judicial. Our cases have held, however, that the judicial power includes "all powers necessary for complete per-

formance of the judicial functions." (*People ex rel. Illinois State Bar Association v. Peoples Stock Yards State Bank* (1931), 344 Ill. 462, 470.) Moreover, it must be noted that the constitution directly vests this court with general administrative and supervisory authority over the courts of this State. (Ill. Const. 1970, art. VI, § 16 ("General administrative and supervisory authority over all courts is vested in the Supreme Court and shall be exercised by the Chief Justice in accordance with its rules").) As this court has previously recognized, "the administration of our judicial system is an element of the 'judicial power' exclusively conferred on the courts." *People v. Joseph* (1986), 113 Ill. 2d 36, 42; see also *People ex rel. Baricevic v. Wharton* (1990), 136 Ill. 2d 423, 432.

Significantly, the judicial power is not limited to the authority to hear and decide cases, as the defendants contend, but is broader than that formulation. Thus, the defendants construe the judicial power too narrowly when they argue that no separation of powers violation can be found here because the challenged administrative proceeding would not affect this court's ability to hear and adjudicate cases. As we have seen, judicial power under the Illinois Constitution includes not only the power to hear and decide cases, but also general administrative and supervisory authority over the courts of this State.

The separation of powers doctrine forbids one branch of government to exercise powers properly belonging to another branch. This court has explained:

"This is a declaration of a fundamental principle; and, although one of vital importance, it is to be understood in a limited and qualified sense. It does not mean that the legislative, executive, and judicial power should be kept so entirely separate and distinct as to have no connection or dependence, the one upon the other; but its true meaning, both in theory and practice, is, that the whole power of two or more of these departments shall not be lodged in

the same hands, whether of one or many." *Field v. People ex rel. McClernand* (1839), 3 Ill. 79, 83-84.

We believe that application of the Public Labor Relations Act to persons directly employed by this court would violate the separation of powers doctrine. An examination of various provisions of the Public Labor Relations Act will demonstrate the constitutional problems inherent in applying that system of labor governance to employees of this court. Under the Act, the particular labor board having jurisdiction over the employer is required to determine appropriate bargaining units and to conduct representation elections when the relevant requirements have been satisfied. After the appropriate board certifies an exclusive bargaining representative for a group of employees (5 ILCS 315/9 (West 1992)), the employer then has the duty to bargain with the employees' designated representative. This requires that the parties meet and "negotiate in good faith with respect to wages, hours, and other conditions of employment, not excluded by Section 4 of this Act." (5 ILCS 315/7 (West 1992).) Section 4's management rights provision exempts from the roster of mandatory subjects of bargaining "matters of inherent managerial policy, which shall include such areas of discretion or policy as the functions of the employer, standards of services, its overall budget, the organizational structure and selection of new employees, examination techniques and direction of employees." (5 ILCS 315/4 (West 1992).) Unless the parties agree otherwise, the collective-bargaining agreement negotiated by them must include "a grievance resolution procedure *** provid[ing] for final and binding arbitration of disputes concerning the administration or interpretation of the agreement." 5 ILCS 315/8 (West 1992).

The Act prohibits employers and labor organizations and their agents from engaging in unfair labor practices, and the Act contains procedures for resolving

claims of that nature. (See 5 ILCS 315/10, 11 (West 1992).) Under those provisions, an employer may not, for example, refuse to bargain in good faith with the exclusive representative of an employee group or violate an order concerning a representation election. (5 ILCS 315/10(a)(4), (a)(5) (West 1992).) Nor may an employer interfere with rights granted to employees by the Act or discriminate against an employee for engaging in protected activity. (5 ILCS 315/10(a)(1), (a)(2) (West 1992).) The Act prohibits corresponding forms of misconduct by labor organizations and their members. (5 ILCS 315/10(b) (West 1992).) Unfair labor practice charges are to be filed with the appropriate labor board, which may investigate the charge, hear evidence, and grant relief. Review of a labor board's disposition of an unfair labor practice charge lies directly to the appellate court. (5 ILCS 315/11(e) (West 1992).) The boards may also institute proceedings in circuit court to enforce their dispositional orders. 5 ILCS 315/11(f), (g) (West 1992).

Except for certain public safety workers, employees covered by the Act may strike. (5 ILCS 315/17 (West 1992).) A strike that would otherwise be permitted under the Act may be barred, however, if it represents "a clear and present danger to the health and safety of the public." (5 ILCS 315/18(a) (West 1992).) The Act provides special procedures for the resolution of bargaining impasses in cases in which a strike is prohibited. 5 ILCS 315/14 (West 1992).

The model of governance found in the Illinois Public Labor Relations Act has been borrowed from private sector bargaining. It must be recognized, however, that large differences exist between public and private employers. A public employer is subject to a number of important legal and financial constraints that simply do not affect private employers. (See *Orenic*, 127 Ill. 2d at 478-79; see also *Central City Education Association v. Il-*

*linois Educational Labor Relations Board* (1992), 149 Ill. 2d 496, 539 (Miller, C.J., concurring in part and dissenting in part) ("public bodies and private corporations are subject to vastly different systems of management, funding, and control, and many aspects of public sector labor relations will not find an exact analogue in the private world. [Citation.] Elected officials are not in all respects like senior management, and taxpayers are not in all respects like stockholders").) As the Supreme Court has noted, " 'The uniqueness of public employment is not in the employees nor in the work performed; the uniqueness is in the special character of the employer.' " (Emphasis omitted.) *Abood v. Detroit Board of Education* (1977), 431 U.S. 209, 230, 52 L. Ed. 2d 261, 281, 97 S. Ct. 1782, 1796, quoting Summers, *Public Sector Bargaining: Problems of Governmental Decisionmaking*, 44 U. Cin. L. Rev. 669, 670 (1975).

Our role in our State's tripartite system of government and our constitutionally based administrative and supervisory authority over the judicial branch sharply distinguish this court from private employers, and from other public employers as well, including the circuit courts. As we explain below, careful consideration of the features of the Public Labor Relations Act demonstrates to us the large intrusion on this court's general administrative and supervisory authority that would occur if we were to hold that employees of this court are covered by the Act. Because of this court's authority over the judicial system of this State, we must conclude that the Act cannot be applied to employees of this court without violating separation of powers principles.

It is clear that this court would forfeit a significant degree of control over the operations of the judicial system if the relationship between the court and its employees were made subject to the Labor Act. Under the statutory scheme, once the requirements for a

certification/representation election were satisfied, the State Board would have the authority to divide the affected group of employees into bargaining units. If the election were successful, this court would then have the duty to bargain with the employees' representative over "wages, hours, and other conditions of employment." (5 ILCS 315/7 (West 1992).) The State Board would have the authority to resolve charges of unfair labor practices, subject only to administrative review. Unless both parties could agree otherwise, any collective-bargaining agreement negotiated by the court and the employees' bargaining representative would necessarily contain a procedure for resolving employee grievances. Bargaining, too, would occur under the threat of statute-sanctioned strikes. As the provisions of the Act demonstrate, this court would lose substantial authority over the direction and control of its employees. We believe that imposing the Act's requirements on this court is inconsistent with the court's constitutionally based administrative and supervisory authority over the judicial system of the State.

As the requirements of the Illinois Public Labor Relations Act indicate, making the Act applicable to employees of this court would mean that the Board would exercise adjudicative responsibility over this court. The potential problems with such a system are manifest, and are illustrated by the decision in *In re Petition for a Representation Election Among Supreme Court Staff Employees* (1979), 406 Mich. 647, 281 N.W.2d 299, cited by the plaintiffs. That case arose from a union representation proceeding involving employees of the Michigan Supreme Court. The court held that the State administrative agency responsible for the proceeding could not take jurisdiction over the court without violating separation of powers principles. The court believed that the agency was attempting to "exercise adjudicative author-

ity" over it, and the court further noted that any appeal from the agency's determination would lie to the appellate court, an inferior tribunal. (*In re Petition for a Representation Election*, 406 Mich. at 664, 281 N.W.2d at 301.) The court concluded:

> "It is good common sense as well as good law that if a tribunal of the executive department would sit in judgment over the Supreme Court, with respect to the issue, the Supreme Court would no longer be functioning as the Supreme Court. That would erode a cornerstone of our Constitution and of our system of government." (*In re Petition for a Representation Election*, 406 Mich. at 665, 281 N.W.2d at 302.)

The concerns expressed by the Supreme Court of Michigan are well founded. Requiring this court to appear in the administrative proceeding and submit to the agency's jurisdiction would place the State Board in the position of determining, on a continuing basis, employment matters affecting employees of this court. As we have stated, these intrusions on this court's constitutionally based judicial authority would violate the separation of powers doctrine. The problems we discern relate not to collective bargaining itself, but to the large degree of control that would be exercised over this court by an agency of the executive branch.

Although the appropriateness of the proposed bargaining unit is not at issue in this case, we also note that this court could be subject to disparate, and potentially inconsistent, requirements once multiple bargaining units were established, as we believe would be required if chief judges were recognized as joint employers of the court reporters. Because the 22 chief judges act independently of each other, the court reporters could find themselves divided into 22 separate bargaining units, corresponding to the boundaries of their respective circuits, if each chief judge was considered a joint employer of the reporters in his or her

circuit. In those circumstances, this court might thus find itself subject to inconsistent contractual obligations, depending on the terms of the local collective-bargaining agreements. That result would only frustrate the principle that this court possesses central supervisory authority over the operations of the judicial branch. *People v. Joseph* (1986), 113 Ill. 2d 36, 42-43.

Nor are we persuaded by the defendants' remaining arguments in support of the application of the Illinois Public Labor Relations Act to employees of this court. The defendants cite article VI, section 18, of the constitution, which provides that the legislature may set policies controlling the hiring and firing of nonjudicial officers of the judicial branch. Article VI, section 18, states, in its entirety:

"(a) The Supreme Court and the Appellate Court Judges of each Judicial District, respectively, shall appoint a clerk and other non-judicial officers for their Court or District.

(b) The General Assembly shall provide by law for the election, or for the appointment by Circuit Judges, of clerks and other non-judicial officers of the Circuit Courts and for their terms of office and removal for cause.

(c) The salaries of clerks and other non-judicial officers shall be as provided by law." Ill. Const. 1970, art. VI, § 18.

We do not agree with the defendants that these provisions indicate that the legislature, besides having the power to set salaries and provide for the appointment and removal of nonjudicial officers, is also free to impose on this court a system of collective bargaining that would violate separation of powers principles. The type of legislation allowed by that provision is exemplified by the Court Reporters Act, which we have already discussed. It should be noted, too, that other provisions of the State constitution allow the General Assembly to establish salaries for a wide range of positions in the executive and judicial branches of State government. Ill. Const. 1970, art. V, § 21 (officers of the executive

branch); art. VI, § 14 (judges); art. VI, § 19 (State's Attorneys); see generally *Quinn v. Donnewald* (1985), 107 Ill. 2d 179 (authority of legislature to prescribe salaries for various officials).

Like other provisions of the constitution, the grant of judicial authority to this court and the grant of authority to the legislature under article VI, section 18, to enact laws concerning nonjudicial officers must be read in harmony. (See *Herget National Bank v. Kenney* (1985), 105 Ill. 2d 405, 410.) We do not agree with the defendants that the legislature's authority to provide for the terms of employment specified in section 18 establishes that the legislature may also freely impose other requirements on this court that would reduce the independence of the judiciary as a separate branch of government.

Finally, the State Board argues that a ruling in favor of the plaintiffs would jeopardize the potential application of a number of other employment-related laws to employees of this court. The State Board believes that various other laws, including measures providing for unemployment compensation and workers' compensation and prohibiting discrimination in employment, would similarly involve an assumption of jurisdiction over this court by an agency of the executive branch and a subsequent administrative determination of this court's responsibilities toward the affected employees.

We do not agree with the State Board that the availability of relief under these other statutory provisions means that the Illinois Public Labor Relations Act must also be found applicable to employees of this court. An important consideration in this regard is the nature and degree of the agency's potential involvement in, or interference with, the operations of this court and the exercise of its constitutional authority as an independent and equal branch of State government. As was

noted in *County of Kane v. Carlson* (1987), 116 Ill. 2d 186, 209, a distinction must be drawn between actions "directly impairing the administrative and supervisory authority of the judiciary" and ones "that would have only an indirect or collateral effect, if any." No violation of the separation of powers doctrine occurs if the disputed action has merely a peripheral effect on the functions of the judicial branch. (*People ex rel. Baricevic v. Wharton* (1990), 136 Ill. 2d 423, 435; *People v. Williams* (1988), 124 Ill. 2d 300, 307.) When a statute unduly encroaches on the authority of the judicial branch, however, a separation of powers violation will be found. (*People v. Taylor* (1984), 102 Ill. 2d 201, 208.) We believe that the infringement involved in the present case threatens a systemic rather than an incidental interference with court operations and thus falls within the latter, prohibited group. The union representation proceeding at issue here would give rise to a continuing intrusion on virtually every aspect of the employment relationship existing between this court and the official court reporters. In contrast, the potential disruptions posed by the other employment-related laws cited by the State Board are much more limited in scope and, in general, would be confined to an individual employee pursuing a single, discrete claim.

Having determined that the State Board may not, consistent with our State constitution, exercise jurisdiction over this court in a proceeding brought under the Illinois Public Labor Relations Act, we next consider the final criterion controlling the availability of a writ of prohibition, whether the plaintiffs are without any other adequate remedy. The State Board and Local 726 both maintain that the availability of administrative review of Board decisions in union certification disputes, in advance of any required collective bargaining (see 5 ILCS 315/9(i) (West 1992)), provides the plaintiffs with

an adequate remedy from any erroneous or invalid order entered by the Board. The union thus contends that the new procedure avoids the problems previously mentioned by this court regarding the inadequacy of administrative review in public sector collective-bargaining disputes. *Orenic v. Illinois State Labor Relations Board* (1989), 127 Ill. 2d 453, 469-70 ("The effects of improperly ordered certification or bargaining would not easily be undone, if at all. Positions taken, agreements reached, and appropriations made would be on public view and formalized on the public record in a way seldom if ever equaled in private-sector collective bargaining").

We do not believe, however, that the availability of immediate review of the Board's bargaining unit and certification determinations fully answers the plaintiffs' concerns. Prior to administrative review, this court would remain subject to the jurisdiction of the State Board. Indeed, the review process would only underscore the constitutional problems manifest in these circumstances, placing the appellate court in the position of reviewing a matter involving this court's authority over its own employees.

We conclude that prohibition is appropriate here. We therefore enjoin the State Board from proceeding further with the representation/certification petition involving the court reporters. In light of this holding, we need not determine whether the chief circuit judges are joint employers of the court reporters, or whether the Administrative Office is a proper employer representative in matters involving employees of this court.

*Writ awarded.*

JUSTICE FREEMAN, dissenting:

Citing separation of powers concerns, the court today bars official reporters of the Illinois judiciary from Labor Relations Act protections. This will doubtless surprise

those affected here, for the plain rule of *County of Kane v. Carlson* (1987), 116 Ill. 2d 186, is that such concerns do not bar judicial branch employees from such protections. Unwilling to overrule *County of Kane* or to honor the rule for which it stands, the court blithely terms the case a "preliminary foray" into labor law, offering a thin distinguishing of it. The court similarly ignores *Orenic v. Illinois State Labor Relations Board* (1989), 127 Ill. 2d 453, which echoed *County of Kane*'s rule two years later. The effort proves too much. This case is correctly decided by looking to the circumstances of the official reporters' employment and in honoring the court's own precedent. The inexorable conclusion is that the Labor Relations Act extends to official reporters. For those reasons, more fully explained below, I dissent.

### Separation of Powers

Constitutional separation of powers concerns arise in this case for two separate, yet related, reasons. First, official reporters are employees of this State's judicial branch of government. (*Orenic*, 127 Ill. 2d at 474; *Carlson*, 116 Ill. 2d at 203; see Administrative Office of Illinois Courts, Administrative Regulations Governing Reporters of the Illinois Courts 10, 11.) The Labor Relations Board, which enforces the Labor Relations Act, is an arm of the executive branch. The Act's enforcement with respect to official reporters would touch on judicial branch administration, matters constitutionally entrusted to this court alone. (Ill. Const. 1970, art. VI, § 16; see also *County of Kane*, 116 Ill. 2d at 208.) Second, this court could find itself subject to an inferior court's jurisdiction, for the Labor Relations Act calls for appellate court review of Board action. (5 ILCS 315/9(i), 11(e) (West 1992) (adopting the Administrative Review Law).) As if that were not problematic enough, in the end, this court might have to rule in a case affecting itself.

Employment of Official Reporters

In this case, honoring separation of judicial and executive branch authority turns on whether this court is the employer representative of the official reporters. It is a fact that the court—ultimately the Chief Justice—exercises comprehensive authority over the judicial branch. (Ill. Const. 1970, art. VI, § 16.) That authority extends even over the State's 22 trial court systems though each circuit is separately administered by a chief judge. (Ill. Const. 1970, art. VI, § 7; *Carlson*, 116 Ill. 2d at 207-08.) In some sense, then, this court is the entity under which all judicial branch personnel, including official reporters, can be said to be employed.

But that is not to say that the court is then the employer representative of official reporters for labor law purposes. To be sure, that conclusion ignores the reality of the reporters' employment as reflected in the Court Reporters Act (705 ILCS 70/1 *et seq.* (West 1992); see Ill. Const. 1970, art. VI, § 18 (giving the General Assembly power to provide for appointment and removal of nonjudicial court officers)). This court shares authority with the 22 chief circuit court judges over the employment of official reporters. (See, *e.g.*, 705 ILCS 70/3, 4, 8 (West 1992) (providing that this court determines the number of court reporters but that the chief judges have authority to appoint and remove individual reporters).) The shared authority is reflected in this court's own administrative regulations. See generally Administrative Office of Illinois Courts, Administrative Regulations Governing Reporters of the Illinois Courts 2, 10.

Does sharing authority over the reporters' employment make the court and the circuit court chief judges joint employers for labor law purposes? Joint employer status is measured against the role each "employer" has in hiring, firing, promotion, demotion, discipline, and in setting wages and work hours. (*Orenic*, 127 Ill. 2d at

474-75, citing *National Labor Relations Board v. Browning-Ferris Industries of Pennsylvania, Inc.* (3d Cir. 1982), 691 F.2d 1117, 1124.) The court sees no reason why consideration of the chief judges' status is necessary to the disposition of this case. (167 Ill. 2d at 188-89.) I do. The answer to the employer representative question on which the case turns is otherwise lopsided; this court's own role in the reporters' employment is accounted for, but that of the chief circuit court judges is not. When the roles of the court and the chief judges are both considered, it becomes clear that only the chief judges are the appropriate employer representatives of official reporters.

True, this court determines the number of court reporters which may be appointed and sets proficiency standards. (705 ILCS 70/3, 7 (West 1992).) But the chief judges—not this court—decide the actual number of reporters to appoint. (705 ILCS 70/4 (West 1992).) It is the chief judges—not this court—at whose "pleasure" the reporters "serve." (705 ILCS 70/4 (West 1992).) So it is the chief judges—not this court—who must alone decide what action to take for a reporter's failure to pass proficiency examinations. (705 ILCS 70/7 (West 1992).) And it is the chief judges—again, not this court—who are alone empowered to "remove[]" reporters from their appointments. (705 ILCS 70/4 (West 1992).) Further, though the court sees something to it, even this court's role in determining official reporters' salaries is removed. (See 167 Ill. 2d at 188.) True, individual salaries are computed against a schedule adopted by this court. (705 ILCS 70/8 (West 1992).) But minimum levels are legislatively determined and are paid "by the State." 705 ILCS 70/8 (West 1992).

This court simply is not the appropriate employer representative for official reporters; the 22 chief circuit court judges are. Incidentally, that is why the court

today is wrong to rely on the Michigan Supreme Court's decision in *In re Petition for a Representation Election Among Supreme Court Staff Employees* (1979), 406 Mich. 647, 281 N.W.2d 299. (167 Ill. 2d at 196-97.) That case involved what this one does not: supreme court employees. Unlike official reporters here who work in the 22 circuit courts under the employ of the chief judges, the employees in *In re Petition for a Representation Election* were employees of the Lansing offices of the Michigan Supreme Court. (*In re Petition for a Representation Election*, 406 Mich. at 661, 281 N.W.2d at 300.) The separation of powers concerns underlying the decision in *In re Petition for a Representation Election* are not the same here.

### *County of Kane* and *Orenic*

*County of Kane* stands for the rule that "inclusion of judicial employees within the [Labor Relations] Act does not by itself trench on the separation of powers principle or on the general administrative and supervisory authority granted by the Constitution to the judicial branch." (*County of Kane*, 116 Ill. 2d at 209.) That rule was honored later in *Orenic*. But today, the court seeks to distance itself from the rule, offering that the cases "involved only employees at the circuit court level[ ] who were employed by the chief judge of the circuit or by the circuit clerk." 167 Ill. 2d at 190.

The statement deserves some attention. It is certainly the case that those in *County of Kane* and *Orenic* who sought Labor Relations Act protections—among them, deputy circuit court clerks, probation officers, bailiffs, and public defenders—did perform duties at the trial level of the judiciary. But the same is, of course, true of official court reporters. And the fact of the matter is that, in *County of Kane*, chief circuit court judges were held to be employer representatives for probation officers who are—like official reporters—State judicial

branch employees. (*County of Kane*, 116 Ill. 2d at 203.) The distinction the court seeks to draw between the circumstances of *County of Kane* and *Orenic* and this case is simply one of no material difference.

Further, the statement merely begs the question presented in this case; this court's status was not, of course, directly at issue in either *County of Kane* and *Orenic*. That escapes the court for, were the statement true, it would undermine the very conclusion the court reaches. The reason: one of the joined actions in *Orenic* was to force the chief judge of Stephenson County to participate in labor bargaining with "clerk-stenographers and senior stenographers employed in the Stephenson County court services department"— that is, official court reporters. If, as it is suggested, this court decided in *Orenic* that those reporters were "employed by the chief judge of the circuit or by the clerk" there would hardly be need for this dissent.

In any event, *County of Kane* confirms that, despite sharing authority with this court, the chief circuit court judges are separately the sole employer representatives of official reporters for labor law purposes. In deciding who was the employer representative of deputy clerks, the court noted that the circuit court—actually the chief judge of the circuit (Ill. Const. 1970, art. VI, § 7)—controls the clerk's office in several important respects. (*County of Kane*, 116 Ill. 2d at 200.) The chief judge determines when the clerk's office is to be open. (705 ILCS 105/6 (West 1992).) The chief judge assigns duties to the office beyond those established by statute or rule. (705 ILCS 105/13 (West 1992).) And the chief judge directs the general operation of the clerk's office upon inspection of it. (705 ILCS 105/22 (West 1992).) Nevertheless, the court concluded in *County of Kane* that the chief judges were not the appropriate employer representatives of deputy clerks; the circuit court clerks were. *County of Kane*, 116 Ill. 2d at 200-02.

The court in *County of Kane* keenly noted that separation of powers concerns must be viewed in a "practical light." (*County of Kane*, 116 Ill. 2d at 208-09.) Board enforcement of the Act which could affect the "administrative and supervisory authority of the judiciary" had to be distinguished from that which would have but an "indirect or collateral effect." (*County of Kane*, 116 Ill. 2d at 208-09.) The important point: it is possible, as the court correctly saw, for there to be such a distinguishing. In *County of Kane*, this court recognized, as do courts in other jurisdictions, that the judicial function simply is not compromised by every Labor Board decision which affects nonjudicial court employees. *County of Kane*, 116 Ill. 2d at 207-09; see also *Teamsters Local 115 v. Pennsylvania Labor Relations Board* (1992), 152 Pa. Commw. 394, 619 A.2d 382; *Circuit Court v. American Federation of State, County & Municipal Employees, Local 502-A* (1983), 295 Or. 542, 669 P.2d 314; *State ex rel. O'Leary v. Missouri State Board of Mediation* (Mo. 1974), 509 S.W.2d 84; see also *In re Petition for a Representation Election*, 406 Mich. at 674-89, 281 N.W.2d at 306-12 (Moody, J., dissenting).

And so, two years later in *Orenic*, the court made clear that the term "employer" for public labor law purposes had to be defined in view of separation of powers concerns and the workings of our unified court system. (*Orenic*, 127 Ill. 2d at 476-77.) At issue was whether counties were joint employers with the chief circuit court judges of nonjudicial circuit court employees. (*Orenic*, 127 Ill. 2d at 474-80.) The counties argued for joint employer status, pointing to their role in funding the court system and setting salaries. (*Orenic*, 127 Ill. 2d at 474-80.) The court rejected the argument and held that the chief judges were separately the sole employer representatives. *Orenic*, 127 Ill. 2d at 476.

This court's authority over the judiciary was of no

direct concern. Yet, as with *County of Kane*, the holding of *Orenic* unavoidably shapes this case's disposition given the reality of that authority. In *Orenic*, the court held that nonjudicial judicial branch employees in the circuit courts were employed by the chief circuit court judges. What is significant is that this court's ultimate authority over the chief judges did not preclude that conclusion.

## Comportment with Separation of Powers and the Illinois Unified Court System

That the chief circuit court judges are the sole employer representatives of official reporters for labor law purposes is correct in terms of the circumstances of the reporters' employment. The conclusion is also correct in consideration of this court's own decisions in *County of Kane* and *Orenic*. But, above all, the conclusion must square with the intended constitutional separation of judicial and executive branch functions. (See *Orenic*, 127 Ill. 2d at 485 (stating that "[a]ny conflict between traditional labor law principles and constitutional principles must be resolved in favor of the latter").) It does.

Recognizing—correctly—the chief judges as sole employer representatives honors this court's constitutional power to check intrusion upon judicial branch administration. No decision of the Labor Relations Board affecting the chief judges as employers of the reporters could encroach on this court's authority. (*County of Kane*, 116 Ill. 2d at 209.) That would be consistent with the authority this court in fact exercises over the chief judges in the administration of the circuit courts.

Honored, as well, would be the integrity of the statutory scheme for administrative review. To recognize the chief judges as the employer representatives is to cede the appellate court no more power than that com-

mensurate with its jurisdiction. The appellate court's review of Board action affecting the chief judges could not result in the strange circumstance of that court's passing on a matter affecting this one—a court superior to it. Nor could the even more absurd situation occur where this court might have to decide, on subsequent appeal, a case involving itself.

No writ of prohibition should issue to bar the Board from considering the reporters' representation/ certification petition. But the consequence of the chief judges' being the sole employer representatives of official reporters is that a writ should issue to bar any consideration of this court's status in that regard. Parenthetically, that would go for the court's administrative office, too, for it has authority only as directed by the Chief Justice. (Ill. Const. 1970, art. VI, § 16; 134 Ill. 2d R. 30.) There is, of course, some irony in that. In the end, the outcome is the same as that for which the court stretches today. The difference, however, is crucial: only in acknowledging the chief circuit court judges to be the sole employer representatives of official reporters is there a legitimate championing of separation of powers.