REQUESTED BY: Senator John Hilgert Nebraska State Legislature
You have made a request for an opinion from the Office of the Attorney General on whether employees of the Supreme Court, specifically probation officers, can be members of a union and, in so doing, be represented in collective bargaining negotiations. Your correspondence indicates that you have introduced LB 908, which transfers the Office of Probation Administration from the Supreme Court to the Department of Correctional Services. Your correspondence further provides that if you were to receive a positive response from our office in connection with the aforementioned opinion request, your reason for introducing LB 908 would be negated. Our response to your request is set forth below.
 DISCUSSION
Article XV, § 13 of the Nebraska Constitution provides that:
 No person shall be denied employment because of membership in or affiliation with, or resignation or expulsion from a labor organization or because of refusal to join or affiliate with a labor organization; nor shall any individual or corporation or association of any kind enter into any contract, written or oral, to exclude persons from employment because of membership in or nonmembership in a labor organization.
This constitutional right is codified in Neb. Rev. Stat. §48-217 (1998), which extends the protection to all employees, and Neb. Rev. Stat. §§ 48-801 to 48-838 (1998), referred to as the Industrial Relations Act, which specifically protects the right of public employees to join or refrain from joining a union.
Of particular relevance is Neb. Rev. Stat. § 48-837 (1998), which guarantees that:
 Public employees shall have the right to form, join, and participate in or to refrain from forming, joining, or participating in any employee organization of their own choosing. Public employees shall have the right to be represented by employee organizations to negotiate collectively with their public employers in the determination of their terms and conditions of employment and the administration of grievances arising thereunder.
This right of collective bargaining by state employees is further protected by the State Employees Collective Bargaining Act, Neb. Rev. Stat. §§ 81-1369 to 81-1390 (1999), which is deemed to be cumulative to the Industrial Relations Act. The State Employee Collective Bargaining Act provides that the State of Nebraska and its employees shall have all the rights and responsibilities afforded employers and employees pursuant to the Industrial Relations Act. Id. at § 81-1372.
The right to unionize is also protected by federal law pursuant to the National Labor Relations Act, 29 U.S.C. § 141 to 187
(1998). Specifically, 29 U.S.C. § 157 provides that employees shall have the right to join labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining, and shall equally have the right to refrain from such activities. Id.
Based on the foregoing, there is no question that employees of the State of Nebraska, which would presumably include court employees, have a constitutional and statutory right to become members of a union and, in so doing, be represented in collective bargaining negotiations. Local Union No. 647 v. City of GrandIsland, 196 Neb. 693, 244 N.W.2d 515 (1976); Mid Plains EducationAssoc. v. Mid Plains Nebraska Technical College, North Platte,189 Neb. 37, 199 N.W.2d 747 (1972).
Although there is no Nebraska case law addressing the specific issue of whether court employees can become members of a union, thereby subjecting the court's employment practices to the jurisdiction of an executive agency, several other states have held that inferior court employees can unionize and subject said courts to executive agency jurisdiction.
In Spokane County v. The State of Washington, 136 Wn.2d 663,966 P.2d 314 (1998), the Supreme Court of Washington held that the state's Public Employment Relations Commission ("PERC"), an executive branch agency, was empowered to resolve disputes concerning the interpretation of collective bargaining agreements between district court judges and the union for their court employees. Id. at 671, 966 P.2d at 318. The district court judges argued that the PERC's purported jurisdiction over members of the judiciary violated the doctrine of separation of powers. The court noted that the primary purpose behind the doctrine was to ensure that the fundamental functions of each branch of government remain inviolate. In rejecting the district court judges' argument, the court noted that the separation of powers doctrine allows for some interplay between the branches of government and each branch must work with the other to effectively function. The court found that the role of the PERC did not usurp any of the inherent functions of the judiciary, and that the judiciary maintained the inherent power of judicial review of all the PERC's decisions. The court concluded by stating that it is sometimes possible to have an overlap of responsibility in governing the administrative aspect of court related functions.Id. at 672, 966 P.2d at 319.
Likewise, in Teamsters Union Local 214 v. 60th DistrictCourt, 417 Mich. 291, 335 N.W.2d 470 (1983), the Supreme Court of Michigan adopted and affirmed the opinion of the Court of Appeals, which held that the constitutional provision of separation of powers was not violated by the Michigan Employment Relation Commission's ("MERC") exercise of jurisdiction over the state's district courts and their employees. In rejecting the defendant's argument that the MERC did not possess jurisdiction to hear any claims with regard to the discharge of judicial personnel, the court held that the MERC's authority to adjudicate labor disputes between the district court and its employees did not encroach upon the constitutional inherent powers of the judiciary.Id. at 295, 335 N.W.2d at 471.
Similarly, the Supreme Court of Oregon has also held that the state's Employment Relations Board's jurisdiction over juvenile court judges and court counselors employed thereby, did not conflict with the separation of powers provision of the Oregon Constitution. Circuit Court of Oregon, 15th Judicial District v.AFSCME Local 502-A, 295 Or. 542, 669 P.2d 314 (1983).
Based on the foregoing, there is ample authority to support the proposition that court employees can become members of a union, and thereby be represented in collective bargaining negotiations. However, the same cannot be said with respect to the issue of whether Supreme Court employees can become members of a union, where said employees' affiliation with a union subjects the Supreme Court to the jurisdiction of an executive agency. Although not decided in the State of Nebraska, the specific issue of whether Supreme Court employees can become members of a union has been decided in both Michigan and Illinois.
The case In re Michigan Employment Relations Commission,406 Mich. 647, 281 N.W.2d 299 (1979), specifically dealt with whether employees of the Michigan Supreme Court, and the Supreme Court itself, were subject to the collective bargaining dispute resolution agency, the Michigan Employee Relations Commission ("MERC"). Although the Court noted that subjecting inferior courts and their employees to the jurisdiction of MERC was permissible, the same was not true for the Supreme Court and its employees. The Court held that the Michigan constitution did not, as a matter of interpretation or logic, authorize MERC to take jurisdiction over the Michigan Supreme Court. In support thereof, the Court held that:
 If MERC has jurisdiction to determine cases with the Supreme Court as a party, then the Supreme Court might be in a position to appeal from the decision of MERC to the Court of Appeals, which again is an inferior tribunal to the Supreme Court. In short, MERC assuming jurisdiction over the Supreme Court puts everything upside down.
Id. at 651, 281 N.W.2d at 301. The Court further noted that if an administrative agency were to sit in judgment over the Supreme Court, the latter body would no longer be functioning as a Supreme Court, resulting in a serious erosion of the state's constitution and it's system of government. Id.
Likewise, in Administrative Office of the Illinois Courts v.State and Municipal Teamsters, 167 Ill.2d 180, 657 N.E.2d 972
(1995), the Illinois Supreme Court, agreeing with the Michigan Supreme Court's ruling issued 16 years earlier, held that the Court and its employees were not subject to the state's Labor Relations Board. The court noted that imposing the Illinois Public Labor Relations Act ("PLRA") requirements on the Supreme Court would be inconsistent with the Court's constitutionally based administrative and supervisory authority over the judicial system of the state. In making the PLRA applicable to employees of the Supreme Court, the Labor Relations Board would exercise adjudicative responsibility over the Supreme Court. The court found that:
 The concerns expressed by the Supreme Court of Michigan are well founded. Requiring this court to appear in the administrative proceeding and submit to the agency's jurisdiction would place the State Board in the position of determining, on a continuing basis, employment matters affecting employees of this court. As we have stated, these intrusions on this court's constitutionally based judicial authority would violate the separation of powers doctrine. The problems we discern relate not to collective bargaining itself, but to the larger degree of control that would be exercised over this court by an agency of the executive branch.
Id. at 197, 657 N.E.2d at 983. Although we cannot speculate how the Nebraska Supreme Court would rule on the issue of whether its employees can unionize, and thereby subject the Court to the jurisdiction of an administrative agency, there is a reasonable probability that the Court would follow the decisions rendered by the Michigan and Illinois Supreme Courts.
The principle of separation of powers, similar to the provisions contain in the Michigan and Illinois Constitutions, is embodied in Article II, § 1 of the Nebraska Constitution. This constitutional provision provides that:
 The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted.
The purpose of this constitutional provision is to establish the permanent framework of our system of government, to assign to the three departments their respective powers and duties, and to establish certain fixed principles upon which government is to be conducted. State ex rel. Stenberg v. Murphy, 247 Neb. 358, 364,527 N.W.2d 185, 192 (1995). This provision prohibits one branch of government from encroaching on the duties and prerogatives of the others or from improperly delegating its own duties and prerogatives. Id.; State ex rel. Spire v. Conway, 238 Neb. 766,472 N.W.2d 403 (1991).
In addition to the inherent authority to adjudicate controversies between adverse parties, the judiciary has also been given duties that pertain to the administration of the judicial branch of government. "Particular powers which have been held within the proper scope of the judiciary include among others the power to regulate the practice of law, to regulate matters of court procedures, to hear causes pending between adverse parties, and to apply the law to the facts of a particular case." 16 C.J.S. § 173. These duties are necessary for the court to conduct the administration of justice, such as formulating court procedures and regulating the admission of attorneys to practice law. See In Re Application of Majorek, 244 Neb. 595,508 N.W.2d 275 (1993). Administrative authority over the courts are further governed by Neb. Const. art. V, § 1, which provides that "[I]n accordance with rules established by the Supreme Court and not in conflict with other provisions of this Constitution and laws governing such matters, general administrative authority over all courts in this state shall be vested in the Supreme Court and shall be exercised by the Chief Justice."
Based on the principle of Supreme Court supremacy and the separation of powers doctrine, it is unlikely that the Nebraska Supreme Court would allow itself to be subjected to the jurisdiction of the Commission of Industrial Relations, even though the Commission has been found not to violate Neb. Const. art. II, § 1. See Orleans Education Association v. SchoolDistrict of Orleans, 193 Neb. 675, 229 N.W.2d 172 (1975) (the Supreme Court held that the statutes authorizing the Commission of Industrial Relations to oversee labor disputes was not an unconstitutional delegation of judicial power.) The confusion created by having inferior courts ruling over the highest court in the land could provide the Nebraska Supreme Court with a sufficient basis, in and of itself, to reject unionization of Supreme Court employees. As noted by the Supreme Court of Illinois, Supreme Court supremacy is a fundamental facet to any functioning judicial system. Administrative Office of the IllinoisCourts, at 198, 657 N.E.2d at 983.
 CONCLUSION
Although the right of state employees, including court employees, to participate in collective bargaining negotiations is unquestionable under state and federal law, Supreme Court supremacy and the separation of powers doctrine raise serious questions as to whether unionization of Supreme Court employees would be permissible. The only two cases on record adjudicating the rights of Supreme Court employees to unionize, thereby subjecting the Court to the jurisdiction of an administrative agency, held that these principles mandated the conclusion that said employees could not unionize.
Thus, we are unable to determine with a sufficient degree of certainty how the Nebraska Supreme Court would rule on the issue on whether Supreme Court employees can become members of a union, and in so doing, participate in collective bargaining negotiations. To avoid any uncertainty as to whether employees of the Supreme Court, specifically probation officers, can be members of a union, the prudent decision may well be to proceed with LB 908, which would transfer the Office of Probation Administration from the Supreme Court to the Department of Correctional Services.
Sincerely,
 DON STENBERG Attorney General
 Thomas J. Olsen Assistant Attorney General
Approved: ______________________________________ Attorney General
pc: Patrick J. O'Donnell Clerk of the Legislature